Stuart v. Ramsey.

## STUART, Appellant, v. RAMSEY et al.

### Division Two, May 22, 1906.

1. **TAX SALE: Apparent Owner: Notice of Actual Owner.** In a suit for taxes, brought against the apparent or record owner, the purchaser at the tax sale does not take the title if he had actual notice at the time of the sale and conveyance to him by the sheriff that such apparent owner was not the real owner.

2. ———: ———: ———: **What Is Actual Notice.** Actual notice that the apparent owner is not the real owner is used in contradistinction to the constructive notice imparted by the record of a conveyance. It does not mean direct evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show that the apparent owner was not the real owner, such as notice of actual possession, or facts and circumstances coming to the knowledge of the purchaser such as would put a man of ordinary circumspection upon his inquiry, will amount to actual notice.

3. ———: ———: ———: ———: **Facts in Evidence.** Plaintiff lived in Kentucky and had bought the land from a corporation, but had not recorded his deed. His Missouri agent testified that he told one of the defendants that plaintiff claimed the

Stuart v. Ramsey.

land and said he had a deed to it, but the deed was not recorded; and that defendant testified that the agent told him, before he had purchased the land at the sheriff's sale, that plaintiff had told him (the agent) that he had a deed to the land, but that it was not recorded, and that plaintiff had requested him (the agent) to pay the taxes and call on him for the amount. That defendant also testified that he knew plaintiff "claimed to own the land," but that the other defendant, who was a clerk in the office of the circuit clerk, told him "there was no deed on record," and they agreed to buy it together, and this other defendant advanced the fee to the sheriff for serving the writ on the corporation, the apparent or record owner. *Held*, that both defendants were, under the circumstances, put upon such inquiry as would have disclosed to them that plaintiff was in fact the owner of the lands by duly executed conveyances, and, therefore, they took no title or interest in the lands by reason of the sheriff's deed to them.

4. ———: ———: ———: **Notice to Collector.** The collector was advised that plaintiff was the owner of the land, and plaintiff corresponded with him for the purpose of ascertaining the amount of taxes and to make provision for the payment of the same; nevertheless, he brought suit against the record owner, and did not inform plaintiff that he had done so. *Held*, that it was the duty of the collector to have brought the suit against plaintiff, under section 9303, Revised Statutes 1899, which requires the suit to be brought "against the owner of the property."

5. ———: ———: ———: **Due Process of Law.** To permit purchasers at a sheriff's sale under a judgment and suit against the record or apparent owner for taxes, to recover the land, when they had been told prior to the sale that plaintiff was the actual owner, and when the collector was notified before the tax suit was brought that he was the owner, would be to deprive the plaintiff of his property without due process of law, and would be in direct violation of the statutory provision requiring him as owner of the land to be notified when the suit for taxes was brought.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED (*with directions*).

*John B. Denvir, Jr.*, for appellant.

(1) The collector had notice that Stuart was the owner of the land in question when the tax suit was

instituted, hence the tax suit should have been brought against Stewart. St. Joseph v. Baker, 86 Mo. App. 316. (2) The purchaser at the tax sale had notice that Stuart was the owner of the land, hence he was not an innocent purchaser. Watt v. Donnell, 80 Mo. 195. (3) The sheriff's deed passed only the title of the American Real Estate & Investment Company, if it passed any title, and did not affect the title of Stuart, the owner of the land, who was not a party to the tax suit. Powell v. Greenstreet, 95 Mo. 15; Bartlett v. Kander, 97. Mo. 356; Jaicks v. Sullivan, 128 Mo. 187. (4) To sustain the judgment of the lower court in this case would be to deprive Stuart of his property without due process of law in violation of the fundamental law of the land. Watt v. Donnell, 80 Mo. 195.

*Frank H. Farris* and *A. H. Harrison* for respondents.

(1) All actions to enforce collection of back taxes shall be prosecuted in the name of the State of Missouri, at the relation and to the use of the collector and against the owner of the property; and the person who appears, by the record of deeds, to be the owner of the land, is the proper party to make defendant. Payne v. Lott, 90 Mo.676; Allen v. Ray, 96 Mo. 542; Crane v. Dameron, 98 Mo. 567; Simonson v. Dolan, 114 Mo. 176; Hilton v. Smith, 134 Mo. 512; Railroad v. View, 156 Mo. 608; Lucas v. Land & Cattle Co., 186 Mo. 456; R. S. 1899, sec. 9303. (2) And this is the unmistakable rule except where the party suing has actual knowledge that the owner of the property is some other person than as shown by the deed records. Vance v. Corrigan, 78 Mo. 94; Watt v. Donnell, 80 Mo. 195; Cowell v. Gray, 85 Mo. 169; St. Joseph v. Baker, 86 Mo. App. 310; Hilton v. Smith, 134 Mo. 508; Ozark Land & Lumber Co. v. Robertson, 89 Mo. App. 480. (3) Actual knowledge is that state of facts and circumstances proven in the case which are "so pregnant with inference, and pro-

vocative of inquiry'' as to put a reasonably thinking man upon notice and investigation; and requires more than mere rumor or unofficial commucations in ordinary conversation. R. S. 1899, sec. 925; Vaughan v. Tracy, 22 Mo. 415; Vaughan v. Tracy, 25 Mo. 318; Maupin v. Emmons, 47 Mo. 304; Ins. Co. v. Smith, 117 Mo. 292; Hickman v. Green, 123 Mo. 165; Morrison v. Juden, 145 Mo. 297. (4) "Actual notice" is an issue of fact, and the finding of a court of equity upon an issue of fact should not be disturbed by an appellate court where there is any tangible and reliable testimony to support the finding. Dunivan v. Dunivan, 157 Mo. 157; Chance v. Jennings, 159 Mo. 560.

GANTT, J.—This is an action brought by T. G. Stuart, a resident and citizen of the State of Kentucky, under section 650, Revised Statutes 1899, to ascertain and determine his title and interest and the interest and title of the defendants in certain real estate lying in the county of Crawford in the State of Missouri, to-wit: the northwest quarter and the northwest quarter of the northeast quarter of section twenty-seven, and the south half of the southwest quarter, and the southwest quarter of the southeast quarter of section twenty-two, all being in township thirty-seven, north, of range four west, and containing in all three hundred and twenty acres.

The suit was returnable to the March term, 1902, of the circuit court of Crawford county. Plaintiff alleged that he was the owner in fee simple, and claimed title to the said lands; that he was informed, and believed, that the defendants made some claim of title, estate or interest in and to said premises adverse to the title and interest of the plaintiff. It was also alleged that the defendant had cut and removed from the premises a large amount of timber, which was standing and growing thereon, of the value of two hundred dollars. The defendants at the August term, 1902, filed a joint answer to the petition, wherein they denied plaintiff's

ownership of the said lands and averred that they, the defendants, were the owners in fee thereof, and under their title were in the absolute and exclusive possession of the said premises, and prayed for judgment decreeing the title to said lands to be in the defendants. On a motion of the defendants the court struck out that portion of the plaintiff's petition which sought to recover for the timber alleged to have been cut by the defendants. At the said August term, 1902, the cause was heard and a judgment and decree rendered in favor of the defendants, H. M. Ramsey and William E. Evans, and that all the right, title and interest of the plaintiff be vested absolutely in the said defendants. In due time the plaintiff filed his motions for new trial and in arrest of judgment, and the same were heard and overruled by the court and exceptions saved by the plaintiff, and thereupon an appeal was granted to this court.

On the trial it was stipulated in open court that on February 29, 1891, Richard Newberry was the owner of the land in question, and that he conveyed it by proper deed of conveyance to the American Real Estate & Investment Company, a corporation, which deed was duly recorded in the recorder's office of Crawford county, Missouri. The plaintiff then read in evidence a warranty deed dated January 23, 1897, and filed for record March 3, 1902, and recorded in deed record book number 49, page 377, from ''The American Real Estate & Investment Company'' to James Halley, of Stoner, in the State of Kentucky. Plaintiff then offered in evidence a general warranty deed, of date August 20, 1900, and filed for record March 3, 1902, and duly recorded, from James Halley, a single man, to T. G. Stuart, of the city of Clark in the State of Kentucky. This was the plaintiff's case in chief.

Thereupon the defendants offered in evidence the original petition and taxbill marked ''Exhibit A,'' filed January 12, 1901, in the suit in which J. F. Hethcock as collector was plaintiff and the ''American Real Estate

& Investment Company," defendant, for delinquent taxes on the lands in suit for the years 1897, 1898 and 1899. The action was brought to the circuit court of Crawford county, at the February term, 1901, the aggregate of the taxes sued for the said years being $22.59. The petition was in the ordinary form of such actions. The certified taxbill filed with the petition shows the land was assessed to "The American Real Estate & Investment Company." To the introduction of the rolls in the said cause, the plaintiff objected on the ground that the suit appeared to be against the "American Real Estate & Investment Company," and the service was had upon a man who is recited in the return of the sheriff, as president of the corporation, who in truth and in fact was not the president of the corporation, and for another reason that the writ was issued on the 12th of January, 1901, and required the said defendant to appear at the February term, 1901, of the said court, and purports to have been served on the 21st of January, 1901, which objections were by the court overruled and exceptions saved. The return of the sheriff is in these words:

"Served this writ in the city of St. Louis, Missouri, on the within named defendant, The American Real Estate & Investment Company, a corporation, this 24th day of January, 1901, by delivering a copy of the writ and petition as furnished by the clerk to D. A. Dyer, its president.

"Joseph F. Dickman, Sheriff,
"by Thos. B. Kilcullen, Deputy."

Defendants then introduced in evidence the judgment rendered at the February term, 1901, on the 16th day of May, 1901, upon the said tax petition, to which plaintiff objected, because the service was not sufficient for final judgment at that term. Said judgment was for $30.43 and for costs, and the collector's commission and attorney's fees, all of which were adjudged a special

lien against the lands in suit, and special execution awarded. The defendants also offered in evidence the special execution in due form on said judgment and the return of the sheriff thereon, which was not signed by the sheriff. The return of the sheriff showed the lands in question were sold to H. M. Ramsey for $45. Upon the application of the defendants the court permitted the sheriff to amend his return by signing his name to the return on the execution, to which the plaintiff then and there objected and excepted. Defendants also offered in evidence the notice of the sale of the land in suit and also the notice of the levy and the sheriff's report of sale. Defendants then offered in evidence the sheriff's deed by W. R. Taff, sheriff of Crawford county, for the said lands to H. M. Ramsey and William E. Evans, acknowledged before William E. Evans, clerk of the said court, and duly recorded August 31, 1901. The defendants then rested.

Thereupon the plaintiff in rebuttal called J. D. McCormick, who was sworn, and testified that he had lived at Cuba, Missouri, for six years; that he had known plaintiff for about two and a half years, but had corresponded with him previous to meeting him personally; that he knew H. M. Ramsey and W. E. Evans; that he did not learn of the sale of the lands in suit until January or February, 1902, he first learned of it from Mr. Ramsey, who told him of it in the bank of Cuba. He testified that the plaintiff wrote to him some eight or ten months prior to the sale of this land, for a statement of its taxes, and the witness wrote to Mr. Hethcock for statement of its taxes, prior to August, 1901, and the bill was about $50, and "I sent it to Mr. Stuart, the plaintiff, and he wrote back to see if I could not get the bill cut, and I wrote the plaintiff that it would cost more to get a reduction than the reduction would be worth." He was then asked, if prior to that time, he had had a conversation with Mr. Ramsey, one of the defendants, about this land, and he answered," I was

in the bank of Cuba and had a letter from Mr. Stuart (the plaintiff), asking me if I would pay the taxes on the land and make a draft on him, and I was in the bank and told this to Mr. Ramsey, and remarked, 'The record did not show the land to be in Mr. Stuart's name,' and that I only had a passing acquaintance with him, and I declined to do so, and I thought I would put Mr. Stuart in correspondence with Mr. Hethcock, and I did so, and the next thing I knew the land was sold." Q. "Did you tell Mr. Ramsey who was the owner of this land prior to that time?" Ans. "I told him that Mr. Stuart claimed the land and said he had the deed to it, but the deed was not on record." Witness testified that he knew the location of the land and was in the real estate business. He testified further he was the agent of the plaintiff and that the land was worth about $2 to $2.50 per acre, or about $700 or $800. On cross-examination he testified that he had quite a correspond-ence with Mr. Stuart about the taxes, and notified him by letter that his taxes were due about two or three times; that he got a statement of the taxes from the collector, Mr. Hethcock, and sent them to the plaintiff, he did not receive any notice from Mr. Hethcock that suit had been filed for the taxes on that land; he did not know that the suit had been filed.

H. M. Ramsey testified that he knew Mr. John R. McCormick. Asked if he knew, prior to the time of filing suit in January, 1901, for taxes, that Mr. Stuart was the owner of the lands, he stated: "I do not know when it was, Mr. McCormick came to me and said that Mr. Stuart had authorized him to go out there and look at the land, and he had never paid him, and I did not know that the land was up for sale, until I came over to court and happened to buy it." Q. "Prior to the date you purchased the land, you knew Mr. Stuart was the owner of the land?" Ans. "I knew that he claim-ed to own the land, but Mr. Evans told me there was no deed on record. I did not know who paid the one dol-

lar that was sent to the sheriff of St. Louis to serve the tax suit. After I came over to court, I was looking over the list and saw it in the papers, and Mr. Evans and I agreed to buy it together. I remember Mr. McCormick came in and said there were some taxes due on the land, and Stuart wanted him to pay the taxes and draw on Mr. Stuart, and he would not do it. That is all I know about it.''

William Evans testified that he knew about the filing of this tax suit against the American Real Estate & Investment Co., and that Mr. Slack and himself advanced the money; that is, he himself advanced the money on all the suits that were filed, to pay for the service. At that time the witness was a deputy clerk for the court, was working in the clerk's office. Mr. Slack was the printer, and was interested in the fees. His purpose in advancing the money to make the service was to secure his fees as clerk. There was no order of publication in this case.

The plaintiff in his own behalf testified that he resided in Kentucky and purchased this land from Mr. Halley. He was asked if he knew Mr. T. B. Dyer, and he answered that he had in his lifetime and was acquainted with the officers of the American Real Estate & Investment Co. He was then asked if he knew who was the president of said Real Estate Company on the 24th of January, 1901, to which the defendants objected, and the court sustained the objection. He testified that he never heard of such a man as D. A. Dyer, that there was no such a man a member of the company. He first learned of the sale of this land sometime after the sale; he knew nothing about the sale; he wrote to Mr. McCormick to make a draft on him; he first tried to settle the difference in the amount; thought the amount was excessive, and wrote to McCormick about making the draft, and that they could settle the difference afterwards; that was prior to the August term of the court, 1901. This testimony was objected to by the

defendants for the reason that if he wrote letters they must be in existence and they are the best evidence, which objection the court sustained.

J. F. Hethcock testified that he was collector of the revenue of Crawford county for two years prior to the 4th of March, 1901; that he did not have in his possession the letters received from non-resident landowners, they had been destroyed; that he did not remember that he had ever received a letter from a man by the name of Stuart between the first of January, 1901, and the 4th of March, 1901.; he did not remember receiving a letter from the plaintiff Stuart, he did not charge his memory with such things as that; that it was his usual practice if a non-resident wrote to him for a statement of the taxes to send him the statement; he did remember that he had had a correspondence with Mr. John L. McCormick as agent for Mr. Stuart as to the taxes on this land.

Plaintiff testified further that he wrote to the collector and not having received any reply, he wrote to McCormick and asked him why the draft was not drawn, and asked him to see about it at once, and received a reply that he had been told by Mr. Ramsey that the land had been sold for taxes.

This was substantially all the testimony.

As already said, the purpose of this suit is to determine the title of the lands described in the petition as between the plaintiff and the defendants. Under the admissions as to the ownership of the lands by Richard Newberry, the common source of title, and the deeds from Newberry to the American Real Estate & Investment Company, and the deed from that company to James Halley, and the deed from said Halley to plaintiff, the title of these lands prior to their sale and conveyance by the sheriff to defendants for taxes, was shown to be in the plaintiff. And the sole question presented for our consideration is whether under the evidence developed in this case, the defendants acquired

plaintiff's title by virtue of the tax proceedings against the American Real Estate & Investment Company, and their sheriff's deed thereunder.

Section 9303, Revised Statutes 1899, provides: "All actions commenced under the provisions of this chapter shall be prosecuted in the name of the State of Missouri, at the relation and to the use of the collector, and *against the owner of the property.*"

In Vance v. Corrigan, 78 Mo. 94, it was ruled that where the statute under which the special taxbill was issued required the suit for its enforcement to be brought against the owner of the land to be charged, in the absence of any knowledge or notice to the contrary, the holder of the bill had the right to assume that the person in whom the records showed the title to be vested, was the true owner, and to sue him accordingly, and a sale under execution upon a judgment against the record owner passed the title as against the grantee in an unrecorded deed from him, provided, the purchaser had no notice of the unrecorded deed, and this is the contention of the learned counsel for the defendants in this case. They insist that inasmuch as the deed from the American Real Estate & Investment Company to Halley, dated January 23, 1897, and the deed from James Halley to plaintiff, dated August 20, 1900, were not filed for record until March 3, 1902, the collector of revenue properly brought suit to enforce the tax lien for the years 1897, 1898 and 1899, against the American Real Estate & Investment Company, the record owner of the lands at the time the suit was commenced on Janury 12, 1901, and that, therefore, they obtained plaintiff's title to said lands, notwithstanding he was not made a party to said suit for said taxes, and was not notified of the commencement of said action. Under the decisions of this court beginning with Vance v. Corrigan, supra, and numerous cases following that decision, to-wit: State ex rel. Hunt v. Sack, 79 Mo. 661; Cowell v. Gray, 85 Mo. 169; Payne v. Lott, 90 Mo. 676;

Evans v. Robberson, 92 Mo. 192; Troyer v. Wood, 96 Mo. 478; Allen v. Ray, 96 Mo. 542; Crane v. Dameron, 98 Mo. 567; Lucas v. Land & Cattle Co., 186 Mo. l. c. 456, they are unquestionably correct, unless the evidence discloses that at the time the collector brought his suit to enforce the lien of the taxes or at the time of their purchase, the defendants knew or had notice that the title of the Real Estate Company had been transferred to Halley, and by Halley to the plaintiff, prior to the commencement of said suit or the receiving of their sheriff's deed by the defendants. In Watt v. Donnell, 80 Mo. 195, this court reviewed the decision in Vance v. Corrigan, 78 Mo. 94, and, among other things, said: "That case further expressly decides that the purchaser at the tax sale takes the interest, and no more, of the defendant in execution in the land so sold. If the record of land titles at the time of the sale show him to be the owner, the purchaser acquires that apparent interest, whatever it is, *provided he have not notice at the time of sale that such apparent owner was not the real owner.*" It has often been decided by this court that if one has notice of the actual possession of land which another has, it will be notice to him of that other's title. [Masterson v. Railroad, 72 Mo. 342; Davis v. Briscoe, 81 Mo. 27; Freeman v. Moffitt, 119 Mo. 280; St. Joseph v. Baker, 86 Mo. App. 310; Wiggenhorn v. Daniels, 149 Mo. 160.]

But these cases do not mean that actual notice of one's title may not be imparted otherwise than by actual possession of the land. Actual notice within the meaning of our law is used in contradistinction to the constructive notice imparted by the record of a conveyance. It does not mean direct evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show it, facts and circumstances coming to his knowledge that would put a man of ordinary circumspection upon inquiry, will suffice. [Maupin v. Emmons, 47 Mo. 304.] As

said by this court in Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. 292: "Courts of equity, since their earliest foundation, have always recognized that the still, small voice of suggestion, emanating as it will from contiguous facts and surrounding circumstances, pregnant with inference and provocative of inquiry, is as potent to impart notice as a Presidential proclamation or an army with banners." In Sensenderfer v. Kemp, 83 Mo. l. c. 588, BLACK, J., speaking for the court, said: "Notice 'is actual when the purchaser either knows of the existence of the adverse claim of title or is conscious of having the means of knowledge, although he may not use them.' [Speck v. Riggin, 40 Mo. 405.]" [See, also, Swisher v. Sensenderfer, 84 Mo. 104.] Applying these well-settled rules to the facts in evidence in this case, it appears from the testimony of Mr. Ramsey himself, that Mr. McCormick told him, Ramsey, before the latter went to Steelville, and purchased the land at the sheriff's sale, that Mr. Stuart, the plaintiff, had told him, McCormick, that he had a deed to the land, but that it was not recorded, and that Stuart had requested him, McCormick, to pay the taxes and draw on him for the amount. All this was prior to August, 1901, when the land was sold. Mr. McCormick testifies that he told Mr. Ramsey that Stuart claimed the land and said he had a deed to it, but the deed was not on record. Mr. Ramsey also significantly adds in his testimony in response to the question whether he knew that plaintiff was the owner of the land prior to the date he purchased the same, "I knew that he claimed to own the land, but Mr. Evans (who was a joint grantee with Ramsey in the sheriff's deed) told me there was no deed on record, and Evans and I agreed to buy it together." It appears further in evidence that Mr. Evans was a clerk in the office of the circuit clerk at that time and advanced the service fee for the sheriff for the city of St. Louis to serve the American Real Estate & Investment Company. That Ramsey and his joint grantee,

Evans, under these circumstances, were put upon that inquiry which would have disclosed to them the fact that plaintiff was in fact the owner of the lands by duly executed conveyances, there cannot, under the laws of this State and the adjudications of this court, be any doubt whatever. But it is also clear that Mr. Hethcock, the collector of revenue, had also been notified that the plaintiff was the owner of these lands, and that the plaintiff was in correspondence with him for the purpose of ascertaining the amount of the taxes and to make provision for the payment of the same, and although he was thus advised that plaintiff was the owner and was corresponding with him about the taxes, he brought suit against the Real Estate Company for these taxes, and at no time mentioned that fact to the plaintiff, and it was equally clear that under section 9303, it was his duty to have brought the suit against the plaintiff as the owner of the lands. It is plain to us that to permit the defendants to recover in this suit would be to deprive the plaintiff of his property without due process of law and in direct violation of the plain statutory provision requiring him to be notified as the owner of the land when the suit was brought for said taxes. He was not made a party to the suit and was not notified in any way that it was pending, and his agent, Mr. McCormick, had no notice of it until after the lands were sold, although the defendants and the collector had notice of his ownership.

In our opinion the judgment of the circuit court upon the undisputed facts appearing in evidence should have been for the plaintiff, divesting whatever title, if any, the defendants acquired under and by virtue of their sheriff's deed, and also any title that the Sligo Furnace Company may have acquired in and to said lands.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to en-

ter judgment for the plaintiff confirming his title to the lands in suit, and divesting any and all title to the same out of the defendants in the action by virtue of their sheriff's deed, and that plaintiff have and recover his costs in this behalf laid out and expended.

*Burgess, P. J.,* and *Fox, J.,* concur.