## C. F. ZWEIGART v. JOHN I. REED, Appellant.

### Division One, May 31, 1909.

1. **TAX SALE: Against Record Owner: Knowledge of Real Owner.** Knowledge by the purchaser at a tax sale that the suit was not against the real owner, though against the record owner, will make the tax deed unavailing as between him and the real owner.

2. ———: ———: ———: **Inquiry: Taxes Paid.** The purchaser at the tax sale who was informed before the sale that the taxes had been paid before judgment in the tax suit against the record owner, was placed in a position which demanded of him, before purchasing, an inquiry about the tax proceeding; and if, by inquiry of the collector, he would have learned that the taxes had been paid prior to judgment, and that the suit was not against the real owner, his tax deed is unavailing to defeat the title of the real owner.

3. ———: ———: ———: **Suit Against Record Owner: Notice.** Where the collector knows who is the real owner, the suit for back taxes must be brought against him, although he is not the record owner; and if with such knowledge he brings suit against the record owner, and the purchaser at the tax sale has knowledge of such facts as ought to have prompted an inquiry, and an inquiry from the proper source would have disclosed the real owner, the purchaser takes nothing by the tax deed, for legal notice follows facts sufficient to put a person on inquiry.

4. ———: ———: ———: **Quitclaim Deed from Purchaser: Notice.** The grantee in a quitclaim deed from the purchaser at the tax sale takes the title subject to all the equities existing between the real owner and such purchaser, although he buys for full value and in good faith; and if the purchaser's tax deed is void, the grantee takes nothing by his quitclaim deed as against the real owner.

221 Sup—3

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*C. H. Skinker* for appellant.

(1) The tax proceedings having been regular, and against the record owner of the land, the tax sale would have been valid even if all the taxes had been paid. Jones v. Driskell, 94 Mo. 190; Hill v. Sherwood, 96 Mo. 125; State ex rel. v. Boyd, 128 Mo. 130. (2) The purchaser at the tax sale under a judgment against the record owner acquires title against the holder of an unrecorded deed. Payne v. Lott, 90 Mo. 676; Vance v. Corrigan, 78 Mo. 94. (3) The purchaser at a sheriff's sale looks only to the judgment, execution, levy and sheriff's deed. Childers v. Schantz, 120 Mo. 313. (4) A judgment upon an order of publication is just as conclusive as on personal service except that it may be reviewed or set aside for cause within three years. Tooker v. Leake, 146 Mo. 429; State ex rel. v. Clarkson, 88 Mo. App. 553. (5) A judgment for a sum in excess of the amount due or in excess of the amount recited in the order of publication in a tax suit is not subject to collateral attack. Schmidt v. Niemeyer, 100 Mo. 207. (6) "If there is any principle of law which is well settled, it is that a judgment which is merely erroneous cannot be attacked collaterally even by strangers." Bedford v. Sykes, 168 Mo. 14. (7) This is an attempt to defeat, evade and avoid the force and effect of the tax judgment, that is, to set aside the deeds which have been made in pursuance of and by authority of said judgment, without attempting to set aside the judgment itself, and is therefore clearly a collateral attack upon the judgment. Lovitt v. Russell, 138 Mo. 474; Brennan v. Maule, 108 Mo. App. 336. (8) A

judgment cannot be collaterally attacked by matters *in pais*. Reed Bros. v. Nicholson, 158 Mo. 624; Covington v. Chamberlain, 156 Mo. 574. (9) The collector is a limited agent of the State and county, the limitations upon his authority being fixed by general laws, of which all persons are conclusively presumed to take notice, and plaintiff is conclusively presumed to know that the collector had no right as collector to secure a reduction or remission of his taxes and that the county court had no power to reduce his taxes. Whatever the collector attempted to do towards getting plaintiff's taxes remitted was as the agent of the plaintiff. State v. Bank, 45 Mo. 528. (10) Plaintiff's negligence in keeping his deed off of record for three years; in permitting the taxes to remain unpaid; in failing to pay the taxes after he knew they were delinquent and subject to suit; in having the collector attempt to get the county court to remit a part of the taxes, and the confusion which was occasioned by his attempt to have the county court do what it had no power or authority to do, caused the title to the land in question to get in such a condition as to mislead and deceive others. As defendant purchased the land in good faith and for full value, relying upon the verity of the court's record, which was regular, plaintiff and not defendant should suffer. Freeman v. Moffit, 135 Mo. 269; Smith v. Boyd, 162 Mo. 146.

*E. H. Gamble* for respondent.

(1) Payment of the tax at any time before the return term of the execution issued on a tax judgment discharges the tax lien and invalidates a tax deed. Huber v. Pickler, 94 Mo. 382; Hoge v. Hubb, 94 Mo. 489; Harness v. Cravens, 126 Mo. 234; Hampton v. McClanahan, 143 Mo. 501; City of Aurora v. Lindsay, 146 Mo. 509. (2) It is the duty of the collector to furnish a written statement of the taxes due, and a payment of all that the collector asks discharges

the tax lien, even though the collector erroneously omits to include in the statement and collection a portion of the taxes. R. S. 1899, sec. 9226; Huber v. Pickler, supra; Hoge v. Hubb, supra; Hampton v. McClanahan, supra. (3) Where *pendente lite,* the owner pays to the collector all the tax that the collector asks, the judgment is invalid, although the costs were not paid. Harness v. Cravens, supra; Hampton v. McClanahan, supra; City of Aurora v. Lindsay, supra. (4) A tax judgment is void, even as against a tax sale purchaser without notice, where the collector knows that the land is owned by one who holds an unrecorded deed, where the latter is not made a defendant in the tax suit; especially where the purchaser at the tax sale also has such knowledge. Evans v. Robberson, 92 Mo. 200; Watt v. Donnell, 80 Mo. 195; Allen v. Ray, 96 Mo. 542; Moore v. Woodruff, 146 Mo. 597; St. Joseph v. Baker, 86 Mo. App. 310; Evarts v. Missouri Lumber & Mining Co., 193 Mo. 433. (5) Respondent's title, which he received from the tax sale purchaser by a quitclaim deed, has all the infirmities of the title of the grantor, and remains subject to all equities that might be asserted against the latter; at least those arising out of transactions not required to be in writing and placed of record. Munson v. Ensor, 94 Mo. 509; Hope v. Blair, 105 Mo. 86; Eoff v. Irvine, 108 Mo. 378; Condit v. Maxwell, 142 Mo. 266; Turner v. Edmonston, 210 Mo. 411.

GRAVES, J.—Plaintiff sues in two counts. By the first, which is an ordinary count in ejectment, he asks for the possession of one hundred and sixty acres of land in Polk county. By the second count, which is in the nature of a bill in equity, and in which he pleads all of his evidence, he seeks to cancel certain deeds covering said land, charging, among other things, collusion and fraud. This count is exceedingly lengthy

and it will serve no good purpose to detail it further, as all the facts proven were fully pleaded and a statement of the facts proven will be sufficient to indicate the questions at issue.

Defendants filed appropriate answers and reply was in conventional form.

Facts proven and admitted make a case in outline, as follows: In August, 1860, James Smith obtained a patent to the land in dispute. March 1, 1895, James Smith and wife conveyed by warranty deed to Thomas H. N. Smith. December, 1899, Thomas H. N. Smith, joined therein by his wife, by quitclaim deed, conveyed the land in dispute to the plaintiff, but this deed was never placed of record. Plaintiff says that he sent this deed in a letter addressed to the recorder of Polk county for record shortly after it was made to him, requesting the recorder to send the amount due and he would remit the amount but that he never heard anything further until he received the deed in the mail in an envelope postmarked, ''Bolivar, Mo.,'' but there was no letter enclosed. Before receiving this first deed in return, and thinking the same lost, plaintiff procured from Thomas H. N. Smith and wife a warranty deed to the land, which was of date October 15, 1903.

Plaintiff further says that on May 17, 1902, he went to the collector's office, then in charge of P. M. Wood, collector, and requested the taxes due upon the land in question and Mr. Wood gave him a memorandum showing the taxes due to be $12.32. This memorandum was in evidence. Plaintiff then discovered that the land was assessed at $400, whilst adjoining quarter sections were only assessed at $200. Mr. Wood agreed to take up the matter with the county, court, and on August 6, 1902, Mr. Wood wrote plaintiff that the valuation had been cut down to $200, whereupon the plaintiff wrote for the amount of the taxes, and receiving a statement that they were $7.99

for the years 1900, 1901 and 1902, he sent said amount by postoffice money order to P. M. Wood, collector, and received two tax receipts in return, one for $5.69 for the year 1900, as expressed on the face, but the collector, Wood, says that it should have been for the years 1900 and 1901, and the form of the receipt would so indicate. The other was for $2.30 for year 1902. Both were of date August 16, 1902. Wood's letter of August 6, *supra,* was in evidence. It also appears in the record that after Mr. Wood understood that the county court had reduced the taxes to one-half of the original amount, he placed in pencil the several amounts due in the back tax book. An exemplified copy of the book was in evidence and such pencil marks were thereon. It also indicated, as per stipulations filed, a tax receipt No. 705 to Smith of date August 16, 1902, and here it might be well to state the two tax receipts above mentioned were made out in the name of Smith. It also indicated that on June 10, 1902, a back taxbill had been made out numbered 25. By the stipulation it was admitted that the pencil marks as to the taxes were made prior to August 16, 1902, the date of the tax receipt.

By T. H. N. Smith, the plaintiff showed that he, Smith, was a dentist in Maysville, Kentucky, where plaintiff also resided; that they were boys together; that he got the land from his father, James Smith; that T. H. B. Dunnegan was his agent for the payment of taxes; that through Dunnegan he had paid the taxes up to and including the year 1899, and produced Dunnegan's letter with reference to the taxes for the year 1896 and said that he had others of a similar character; that Dunnegan would send him notices each year and he would send the money; that in December, 1899, he sold the land to Zweigart and made him a deed to it; that in the fall of 1900 he got the usual notice from Dunnegan about the taxes for the year 1900, and wrote him that he had sold the land to Zweigart;

that October 15, 1903, he made Zweigart a second deed; that Dunnegan acted as agent for his father; that he (witness) did not know suit had been brought for the taxes when he made this second deed; that he never heard from Dunnegan after he notified him that Zweigart owned the land.

The record shows that Zweigart paid the taxes for 1903 and introduced his receipt in evidence. It further appears that on this tax bill No. 25, suit was brought for the taxes of 1900, and at the August term of the circuit court, on August 22, 1902, a judgment was rendered in favor of P. M. Wood, collector, for such taxes. It will be observed that this judgment was seven days after the tax receipt for the years 1900 and 1901. Under this tax judgment the land was sold and bought in by T. H. B. Dunnegan on December 8, 1902, and a sheriff's deed made to him of said date. May 27, 1904, Dunnegan by quitclaim deed conveyed to defendant John I. Reed.

For the defendant, Dunnegan testified that he had paid taxes for Smith and his father; that he had never heard that plaintiff owned the land until after he purchased it; that before the tax sale he learned that the taxes had been paid in part; that he knew after suit was brought that somebody had paid part of the taxes and that he found that out before the sale; that he didn't know whether the taxes had been paid before judgment was rendered or not; that he didn't examine to see the date when the taxes were paid; that the collector or clerk told him the costs were not paid; that he supposed the land was selling for costs; that he received no letter from Thomas H. N. Smith in 1900 or at any other time notifying him that the land had been sold to plaintiff; that the land was sold by forty-acre tracts.

P. M. Wood, the collector, testified that he remembered the circumstance of the plaintiff coming to his office sometime in 1902 in regard to some taxes; that

he did not remember the name, but he was there look-
ing after some back taxes and was kicking about the
amount; that he, witness, went before the county court
and told them the assessment was too high and he
understood they reduced it, and notified plaintiff and
plaintiff sent him the taxes; that to his best recollec-
tion Zweigart was in his office about the first of Au-
gust; that he didn't remember whether the statement
of May 17 was sent to him or given to him in person;
that Zweigart was only in the office once; that he at
that time arranged with him (witness) to bring the
matter to the attention of the county court; that in
sending him a statement in August he would have gone
to the back tax books for the amounts and if he had ex-
amined it and it had shown a suit pending he thought
he would have so notified Zweigart.

The defendant, John I. Reed, testified in his own
behalf that he bought this land in a deal for about
two thousand three hundred acres; that most of it
belonged to the Dunnegan and Bushnell estate, but
this particular tract belonged to Judge Dunnegan
and he paid him $400 for it; that this was full value;
that he thought he was getting good title and had no
information that the taxes were paid in whole or in
part prior to the tax sale; that he knew he was buy-
ing through a sheriff's deed, but had no knowledge of
any irregularities; that he did not know of Zweigart's
claim until he got a letter from him in 1904, which
letter the plaintiff had placed in evidence.

P. M. Wood, recalled, says that whilst tax re-
ceipt No. 705 purports to be for year 1900, it was in
fact for 1900 and 1901; that the county court told
him they would reduce the tax one-half and then he
changed his books.

It was admitted that the county court records
did not show any reduction of the taxes on this land.

Upon this evidence the court made a finding of
facts as follows:

"I find the facts as follows

"The second count of the petition charges numerous frauds against the defendant, Dunnegan and Wood. I do not believe that these men intended to do the plaintiff any wrong or that they intended to take advantage of him in any way to get his land. I believe the testimony of these witnesses, and am satisfied that they did not act in concert, and did not commit any fraud.

"I find that the plaintiff was in Bolivar about May 7, 1902, and arranged with the collector, Wood, for Wood to go before the county court and try to secure a reduction of the assessment of this land. Wood went before the county court at its August term, and was no doubt informed by the court, or by some judge of the court, that the assessment would be reduced and notified plaintiff that the reduction had been made. The county court had no right or power to reduce the assessment on this land, and as a matter of fact it did not reduce the assessment or tax on the land, and made no entry in regard to the matter; but the county court is sometimes not very careful about its methods of proceeding, and Wood thought the assessment had been reduced.

"Wood notified the plaintiff what the taxes amounted to on the basis to which they had been reduced by the court, and plaintiff remitted the amount to Wood and received Wood's receipt therefor, dated August 16th. After receiving the receipt from Wood, the plaintiff had a right to consider the taxes paid and to rest easy as to that matter.

"Wood acted in good faith in the matter. I am satisfied that he never had in mind the identity of this land when he made out a tax bill against it. The collector has so many transactions that it is very easy for him to overlook a matter of this kind.

"It may have been that his attorney was partly to blame for taking judgment for the taxes, but at any rate I am satisfied that Wood did not intend any wrong, and that he merely failed to identify the transactions with the land in the tax suit.

"Dunnegan saw the land advertised for sale under the tax judgment and execution issued thereon, and as he owned other land in the same vicinity he wanted to buy it. Just before the sale took place he was informed by Wood that the tax had been paid, but not who had paid it, and the court officers told him that the costs were unpaid, and that the land was selling for the costs, and Dunnegan supposed they had a right to sell it for the costs. But he should have gone further and ascertained the whole facts, and his failure to do so operated a wrong to plaintiff's rights that he should be relieved from as against Dunnegan.

"The tax proceedings are regular on their face, and I am satisfied that the land was sold by the smallest legal subdivision.

"The defendant, when he bought the land from Dunnegan, knew nothing about the plaintiff having paid the taxes, and bought the land in good faith, and for value. He purchased the land along with a large tract—some twenty-three hundred acres—and received an administrator's deed to the most of the land, and supposed he was getting a good title. As he took the land by a quitclaim deed, however, he took subject to plaintiff's equitable claim. He stands in no better position than Dunnegan did, and plaintiff is therefore entitled to relief."

Judgment was for plaintiff upon both counts save and except it was adjudged that plaintiff should pay defendant $50, presumably the amount paid at the tax sale with interest, although the judgment does not so state.

After unsuccessful motion for new trial, the defendant appealed. Such is the record.

I. The first material question to be determined in this cause is the state of the equities, if any, between plaintiff and Dunnegan, the purchaser at the tax sale. Dunnegan knew that Smith and his (Smith's) father had been owners of the land, for each year up to 1899 he had been paying taxes for them. He also knew that for some cause Thomas H. N. Smith had ceased to pay taxes in 1899. Smith testifies that he wrote Dunnegan that he would not pay the taxes for 1900, because he had parted with the title. This, of course, is denied by Dunnegan, and the second count of the answer being equitable, we have a right to review the evidence and are not bound by the findings of fact by the chancellor, *nisi*. Dunnegan knowing that Smith had not been paying taxes, also knew that some one had paid the taxes. He admits that he had such knowledge before his purchase. With the knowledge of the fact that some one had paid the taxes, he was at least placed upon inquiry. Had he made inquiry he would have found from the collector's book evidence that a tax receipt had been given for the taxes. Had he made further inquiry he could have ascertained that the real owner of the land was not Smith but Zweigart, because the collector Mr. Wood had been informed on May 17 that Zweigart was the owner and had been in correspondence with Zweigart about the taxes, and had even received the taxes from Zweigart and issued receipts therefor. Dunnegan being informed, as he was, of the fact that the taxes were paid was placed in a position which demanded of him an inquiry about the tax proceeding before purchasing, and had he gone to the one source of information, as to when and by whom taxes were paid, he would have been fully advised that as a matter of fact the suit was not instituted against the real owner, for the collector knew

the fact of Zweigart's claim of title and knew that the taxes had been receipted for prior to judgment.

Had Dunnegan in fact known that the suit was not against the real owner, although against the record owner, the tax deed unquestionably would be unavailing as between him and the real owner. [Stuart v. Ramsey, 196 Mo. 1. c. 415, and cases therein cited.]

And further, if he had such notice as would have placed a prudent man upon inquiry as to the facts, and such inquiry would have revealed the fact that the real owner had not been sued, then he would be in the same position as if he had actual knowledge of the fact. In fact, such would be construed in a court of equity to be actual notice. [Sensenderfer v. Kemp, 83 Mo. 1. c. 588; Swisher v. Sensenderfer, 84 Mo. 104; Life Ins. Co. v. Smith, 117 Mo. 292; Stuart v. Ramsey, 196 Mo. 1. c. 415, et seq.]

Under the law, when applied to the evidence in the record, Dunnegan had actual notice not only that tax receipts had been given for the taxes, but more material than all that the real owner was not a party to the judgment under which he bought. As between plaintiff and Dunnegan the plaintiff would be entitled to judgment cancelling the deeds for this reason if no other.

But further, there is but little question that the collector, P. M. Wood, was apprised on May 17 that Zweigart was the owner of this land. The trial court so found and the finding is well grounded in facts. Wood was the collector who instituted the tax proceeding, June 10, 1902, nearly a month after the date he was informed that Zweigart owned the land. Section 9303, Revised Statutes 1899, so far as applicable, reads: "All actions commenced under the provisions of this chapter shall be prosecuted in the name of the State of Missouri, at the relation and to the use of the collector, *and against the owner of the property*." Knowing that Zweigart owned the land it was the duty of

Wood to have brought the suit in the name of the real owner rather than the record owner.

In the case of Stuart v. Ramsey, *supra,* very similar to the case at bar as to facts, the court said:

"But it is also clear that Mr. Hethcock, the collector of revenue, had also been notified that the plaintiff was the owner of these lands, and that the plaintiff was in correspondence with him for the purpose of ascertaining the amount of the taxes and to make provision for the payment of the same, and although he was thus advised that plaintiff was the owner and was corresponding with him about the taxes, he brought suit against the Real Estate Company for these taxes, and at no time mentioned that fact to the plaintiff, and it was equally clear that under section 9303, it was his duty to have brought the suit against the plaintiff as the owner of the lands. It is plain to us that to permit the defendants to recover in this suit would be to deprive the plaintiff of his property without due process of law and in direct violation of the plain statutory provision requiring him to be notified as the owner of the land when the suit was brought for said taxes. He was not made a party to the suit and was not notified in any way that it was pending, and his agent, Mr. McCormick, had no notice of it until after the lands were sold, although the defendants and the collector had notice of his ownership. In our opinion the judgment of the circuit court upon the undisputed facts appearing in evidence should have been for the plaintiff, divesting whatever title, if any, the defendants acquired under and by virtue of their sheriff's deed, and also any title that the Sligo Furnace Company may have acquired in and to said lands."

The only difference between the Stuart case and this case is that in the Stuart case the purchaser had been told who was the real owner, whilst in the case at bar the purchaser had knowledge of such facts as

ought to have prompted an inquiry and an inquiry from the proper source would have disclosed the real owner. In law the purchasers in each stand upon the same footing. With facts sufficient to place a person upon inquiry the legal notice follows.

The deed to Dunnegan in our judgment is void.

## II.

There is no question but that defendant Reed bought for full value, thinking he was procuring good title, although he was aware of the fact that a tax deed was a link in his chain of title. But he took a quitclaim deed as his muniment of title, and he therefore took the title subject to all the equities existing between the plaintiff and Dunnegan, the purchaser at the tax sale and the grantee of defendant Reed. Such is the case-law of this State. [Condit v. Maxwell, 142 Mo. 266; Eoff v. Irvine, 108 Mo. 378; Hope v. Blair, 105 Mo. 85.]

From what has been said it follows that the judgment below was for the right party and it is accordingly affirmed.

All concur.