Gary M. Gaertner, Jr., Judge
Introduction
This case involves a property dispute over a 20-foot-wide strip of land (disputed property) that is part of a subdivision lot, which Jason York (York) recently purchased at a tax sale. Both parties appeal the trial court's summary judgment, which found that Clyde J. Horner and Cecil F. Homer (collectively, the Horners) were entitled to the entire disputed property by adverse possession, but awarded only an eight-foot strip of the property to the Horners and the remainder to York. Because we find that York's collector's deed defeats the Horners' claim of adverse possession under the circumstances here, we reverse the trial court's judgment. Further, because genuine issues of fact remain regarding York's claim of ejectment, we remand to the trial court to resolve this issue.
Background
The Homers are the owners of Lot 14 of the Lake Forest Estates subdivision in Jefferson County, Missouri. The Horners have been the recorded owners of Lot 14 since 1999. Lot 14 is adjacent to Lot 15, on which the disputed property sits. Lot 15 is in the southeast corner of the subdivision, and the disputed property consists of a 20-foot-wide and approximately 163-foot-long strip of land extending from the northwest corner of Lot 15 and providing access to Wilbert Road, a road connecting several lots in the subdivision. Lot 14 sits along Wilbert Road and also shares a border with the disputed property and the western property line of Lot 15.
In August of 2013, York purchased Lot 15 at a tax sale and received a tax certificate of purchase.[1] York later received a collector's deed for Lot 15 in February of 2014, stating that York had paid all taxes due on Lot 15 and the redemption period for the lot had expired. York recorded the deed that same day in Jefferson County.
In February of 2016, York brought an action against several defendants with prior recorded interests in Lot 15 to quiet title to Lot 15 in his name. York's petition also contained a count of ejectment against the Homers, alleging that the Homers encroached upon Lot 15 by maintaining a *644 concrete retaining wall that extends approximately 7.1 feet into the disputed property. York sought the right to remove the wall as well as damages consisting of the reasonable cost of removing the wall. The Homers filed an answer alleging the affirmative defense of adverse possession for the entire 20-by-163-foot strip of disputed property. The Horners further alleged the affirmative defense of unclean hands, claiming that York unreasonably delayed legal action with the knowledge that the Homers have a rightful claim to the disputed property. The Horners also filed a counterclaim to quiet title to the disputed property due to adverse possession.
The trial court entered an interlocutory order on York's claim to quiet title as to all defendants except the Homers, finding that York was vested with fee simple title to Lot 15, subject to any to-be-determined interests of the Horners. Both York and the Homers filed motions for summary judgment. The trial court concluded that the Horners' claim of adverse possession survived the tax sale and that York had acted with unclean hands by turning a blind eye to the Horners' possession of the disputed property. However, though the trial court found the Homers were entitled to the entire disputed property through adverse possession, in the interest of equity, the court awarded an eight-foot-wide strip of the disputed property containing the retaining wall to the Horners and the remainder to York to preserve Lot 15's access to Wilbert Road. This appeal follows.
Standard of Review
Our review of a trial court's summary judgment is essentially de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, taking uncontradicted facts in support of the motion as true and according the non-movant the benefit of all reasonable inferences from the record. Id. The movant must show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mo. R. Civ. P. 74.04(c) (2016).
Discussion
Both parties appeal the trial court's summary judgment, and both parties argue they are entitled to the entire disputed property. The Horners argue they have a right to the property through adverse possession, and York argues he has a superior right to the property by virtue of the collector's deed and the fact that the Homers did not seek to redeem any interest they had in the disputed property prior to the issuance of the collector's deed. York does not dispute the elements of the Homers' adverse possession claim, but rather he argues they are irrelevant given the timeline of proceedings here. It is undisputed that the Horners have no recorded interest in the disputed property, and that York received a collector's deed for the tax sale after the redemption period for Lot 15 passed. The primary issue is whether, under these circumstances, the collector's deed extinguished the Horners' claim of adverse possession. We find it did.
Since 1935, the Jones-Munger Act (the Act), currently codified in chapter 140 of the revised code, has governed tax sales in Missouri. Sections 140.010 - 140.722, RSMo. (Supp. 2015); Hobson v. Elmer, 349 Mo. 1131, 163 S.W.2d 1020, 1022 (Mo. 1942). The Act provides that property for which taxes are delinquent three years in a row will be advertised for sale by the county collector. Section 140.170.[2] The purchaser *645 of such property receives a certificate of purchase, but the land is not immediately conveyed to the purchaser. Hobson, 163 S.W.2d at 1022. Rather, the sale of the property triggers a redemption period, under which "the owner; lienholder; or occupant of any land or lot sold for taxes, or any other persons having an interest therein," has the right to redeem such interest by paying "the reasonable and customary costs of sale," consisting of the purchase price and other costs associated with the sale. Section 140.340.1-2.
Further, prior to the end of the redemption period, the purchaser must notify any party with a recorded interest in the land of the party's right to redeem the land. Section 140.405.2, 6. The timing of the notice and the length of the redemption period depend on how many times the collector has offered the property for sale. Where a purchaser buys property at a third sale offering, as here, the redemption period is 90 days. Section 140.250.1. The purchaser must notify parties with "a publicly recorded unreleased deed of trust, mortgage, lease, lien, judgment, or any other publicly recorded claim upon the real estate ... within forty-five days after the purchase at the sale" of the party's right to redeem the property. Section 140.405.6. If no party redeems the land within the redemption period, then the collector issues a deed to the purchaser conveying the land as "an absolute estate in fee simple[.]" Section 140.420. The purchaser may then sue to quiet title to the land but must add as defendants "all parties who have, or claim to have, or appear of record ... to have any interest in, or lien upon, such lands or lots." Section 140.330.1. Once a court has quieted the purchaser's title in the land, the statute continues, "no outstanding unrecorded deed, mortgage, lease or claim shall be of any effect as against the title or right of the complainant as fixed and declared by the decree made in such cause."
Section 140.460 states that a collector's deed "shall be ... prima facie evidence of a good and valid title in fee simple in the grantee of said deed[.]" While an opponent may still offer evidence against the title, "[t]he party challenging a tax deed has the burden to prove its invalidity." Trailwoods Homeowners' Ass'n v. Scott, 938 S.W.2d 669, 670 (Mo. App. E.D. 1997).
The Homers argue essentially that because they had gained title to the disputed property through adverse possession prior to the tax sale, and because the nature of their possession was open and obvious to any observer, York took Lot 15 subject to the Horners' title for the disputed property. However, this position overlooks the nature of a tax sale, as just outlined. It is true in Missouri that an adverse possessor is vested with title as soon as the 10-year period has passed, and such title is indefeasible and divests the record owner of his or her title, even if the adverse possessor later abandons the land. La Grange Reorganized Sch. Dist. No. R-VI v. Smith, 312 S.W.2d 135, 139 (Mo. 1958). Assuming the Horners did gain title to the disputed property through adverse possession, the fact remains that no party, including the Horners, paid any taxes for the disputed property, and it was therefore subject to sale by the collector for delinquent taxes under the Jones-Munger Act. Section 140.150. At this point, due to the Horners' adverse possession of the disputed property, the Homers became parties with an interest in the tax delinquent land and were then entitled to redeem the land under Section 140.340, which they never did.
York purchased Lot 15 at a third offering for sale and received a certificate of purchase in August of 2013, and no party, *646 including the Horners, took any action to redeem the land. York further asserts he had no actual notice of the Horners' claim of adverse possession, which the Horners do not contest. In February of 2014, York received a collector's deed. Relying on prior cases finding that an adverse possessor's interest defeated a tax purchaser's interest where the tax purchaser had sufficient knowledge to at least be put on inquiry notice of the interest, the Horners argue that York was put on inquiry notice of their interest here due to the open and obvious nature of the Homers' possession of the disputed property. The Horners' arguments are unpersuasive.
First, cases discussing the concept of "inquiry notice" and its impact on tax sales predate the Jones-Munger Act. See Gulley v. Waggoner, 255 Mo. 613, 164 S.W. 557 (Mo. 1914) ; Adams v. Gossom, 228 Mo. 566, 129 S.W. 16 (Mo. 1910) ; Zweigart v. Reed, 221 Mo. 33, 119 S.W. 960 (Mo. 1909) ; Stuart v. Ramsey, 196 Mo. 404, 95 S.W. 382 (Mo. 1906). To the extent they are applicable in light of the Act, inquiry notice involves having enough knowledge of a possible interest in the land that it would prompt the purchaser to make an inquiry, such as requesting tax assessments or tax receipts for the property, which would result in discovering that the real owner of property had not been sued for delinquent taxes or notified of the tax sale. See, e.g., Gulley, 164 S.W. at 559 (citing Zweigart, 119 S.W. at 963 ). In these cases, the Missouri Supreme Court found that tax sale purchasers were at fault for knowing of parties who had ownership interests but who were not made parties to the tax sale proceedings, or for failing to add such parties to the purchaser's later suit to quiet title.[3] Unlike these cases, there is nothing in the record here indicating the Horners had paid taxes on the disputed property or that the collector had actual knowledge of any ownership interest of the Horners in the disputed property. Thus, there is nothing in the present case similar to these earlier cases suggesting that a similar level of inquiry would yield discovery of the Horners' interest here.
Even if the collector had knowledge of the Horners' interest, while the collector was formerly required to make interested parties defendants to a suit for delinquent taxes, publication notice is the current statutory procedure under the Jones-Munger Act. Lohr v. Cobur Corp., 622 S.W.2d 270,273 (Mo. App. E.D. 1981). This procedure is substantially the same as the process prior to the Act:
The [publication] gives notice to all persons interested in the land to be sold. They are, therefore, in the same position as those who were made parties to the tax suit under the former procedure except they have the right of redemption expressly given by the [A]ct.
Id. (quoting *647 State ex rel. Buder v. Hughes, 350 Mo. 547, 166 S.W.2d 516, 518 (Mo. 1942) ). Thus, where the collector follows the publication procedure, the collector and the purchaser cannot be at fault for failing to include interested parties in the tax sale process.
There is no evidence here that the collector failed to give proper publication notice of the sale, and it is the Horners' burden to produce such evidence. Trailwoods, 938 S.W.2d at 670. Thus, assuming the Horners had acquired an interest in the disputed property through adverse possession, they had notice of their right to redeem their interest by virtue of the publication notice of the tax sale. See Davis v. Johnson, 357 Mo. 417, 208 S.W.2d 266, 268 (Mo. 1948) (former version of statute providing "owner or occupant of any land or lot sold for taxes, or any other persons having an interest therein, may redeem the same" entitled adverse possessor to redeem land). Gulley, Zweigart, and Stuart are inapplicable here.
Further, though Adams also predates the Jones-Munger Act, its discussion of the purchaser's failure to add a known party with interest to the quiet title action may be applicable given Section 140.330.1's mandate to make any party with an interest in the land a defendant to the quiet title action. See Shaw v. Armstrong, 361 Mo. 648, 235 S.W.2d 851, 855 (Mo. 1951) (noting that defendants in quiet title suit under Section 140.330 may have ability to redeem land or assert invalidity of tax deed), overruled on other grounds by Journey v. Miler, 363 Mo. 163, 250 S.W.2d 164 (Mo. banc 1952) ; cf. Johnson v. Mervyn W. Jenkins, Inc., 904 S.W.2d 586, 589 (Mo. App. W.D. 1995) (applying bona fide purchaser rule to tax sale, holding that where tax purchaser knew of adverse possessor's interest takes interest inferior to adverse possessor's interest). However, there is no evidence in the record here that York knew of the Horners' interest and failed to add them as named parties to his suit to quiet title upon receiving the collector's deed.[4] Whereas the court in Adams noted that the obvious and notorious nature of the possession, in that the Adams family had claimed possession over the entire property by building a house on a vacant lot, raising a family there, and the surrounding neighbors knew of the land as "the Adams place," would have put a purchaser on notice, the facts are distinguishable here. Lot 15 remains undeveloped to a large degree, except for the strip of disputed property, which is made up of landscaped areas and a portion of a retaining wall. Unlike the clear signal of a house on the lot in Adams, without a boundary survey here, it is far from clear that a person viewing Lot 15 would have reason to know that the disputed property is part of Lot 15 rather than Lot 14 and that the Horners have claimed it for their own land for a period of at least 10 years.[5]
*648 Moreover, York argues that he did not view Lot 15 prior to purchasing it, and the Jones-Munger Act does not provide for a purchaser to take possession of the land until well after purchase. See Sections 140.195, RSMo. (Supp. 2015) (enacted after tax sale here; relieving parties of liability for trespass only if entering lands of another is necessary to provide notice of tax sale or right to redeem); 140.310.1 (purchaser entitled to possession of land any time after one year from date of sale). While the Act is silent regarding the right, and certainly any duty, of a tax sale purchaser to view the land in order to discover potential unrecorded interests prior to purchase, as we have said under the unique circumstances here, it is likely that the Horners' interest would have been discovered only after a boundary survey.[6] We find no precedent supporting the proposition that a tax sale purchaser has a duty to perform a boundary survey to discover any potential unrecorded interests on the land or face losing their purchase from an unknown party after following all procedures in the Jones-Munger Act. Cf. Powell v. St. Louis County, 559 S.W.2d 189, 194 (Mo. banc 1977) (discussing counterproductivity of applying inadequacy of consideration rule to sales under Jones-Munger Act: "Most people do not want to buy uncertainty and lawsuits"). The Act provides for notice of an upcoming tax sale to parties with such unrecorded interests through publication, and we will not read into the Act an additional duty of a boundary survey on the part of a purchaser who otherwise acts in good faith.
In light of the foregoing, we find the Horners did not meet their burden to rebut the prima facie evidence of the collector's deed as vesting fee simple title to the disputed property in York. There is no evidence the statutory procedures regarding the tax sale were violated in any regard, and the record does not contain evidence sufficient to impute notice to York of the Horners' interest in the disputed property. Even assuming the Horners acquired title to the disputed property through adverse possession, they failed to pay taxes on the disputed property or take subsequent action to redeem the disputed property. The trial court's judgment finding the Horners' claim of adverse possession survived the tax sale is reversed.
The remaining issue concerns the remedy. In light of its determination regarding title to the disputed property, the trial court granted summary judgment in favor of the Horners on York's ejectment claim. Because we find title to the disputed property is properly vested in York, the ejectment claim remains to be adjudicated. Under Section 524.110, a plaintiff in a suit for ejectment can recover "damages for all waste and injury, and, by way of damages, the rents and profits, down to the time of assessing the same," with certain limitations. The amount of damages due, if any, present genuine issues of material fact. Thus, we reverse the trial court's summary judgment on York's claim of ejectment and remand to the trial court for further proceedings thereon.
Conclusion
Because the Horners failed to rebut the prima facie evidence of York's title to the *649 disputed property, we find the trial court erred in granting partial summary judgment in favor of the Horners. We reverse the judgment of the trial court, and we remand with instructions to enter judgment for York on his quiet title claim and against the Horners on their claim of adverse possession, and for further proceedings consistent with this opinion.
Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs.

Section 140.290, RSMo. (Supp. 2013) provides that after a purchaser has made payment for the land, "the county collector shall give the purchaser a certificate in writing, to be designated as a certificate of purchase...."

All statutory references are to RSMo. (Supp. 2013), unless otherwise indicated.

Gulley, 164 S.W. at 559 (collector knew of plaintiffs' interest because they had been paying taxes on the land but failed to add them to tax proceeding; purchaser was on inquiry notice due to neighborhood knowledge of their interest and 20 years of plaintiffs living on land that true owners were not made parties to tax suit under which purchaser bought land); Adams, 129 S.W. at 20-21 (tax suit did include plaintiffs, thus purchaser bought with knowledge of their ownership interests but failed to include them in later suit to quiet title; plaintiffs at trial tendered purchaser's bid and taxes paid on land since purchase); Zweigart, 119 S.W. at 963-64 (collector knew plaintiff was owner but failed to bring tax suit against plaintiff; purchaser knew real owner was not party to judgment under which he bought land); Stuart, 95 S.W. at 386 (collector and tax purchaser knew plaintiff was true owner because plaintiff had recorded interest, but collector brought delinquent tax suit against prior owner and plaintiff was never notified of tax sale).

Though the Horners are not named specifically in Count 1 of York's petition to quiet title, the suit does name as defendants "any persons or entities who have, or claim to have ... an interest ... in the real property [at issue]." However, the Horners are named in Count II of the same petition, received service of the petition when York filed the quiet title action, and could have been named as defendants in Count I during the pendency of the suit if necessary. Further, the trial court's ruling on Count I accounted for the Horners' possible interests by quieting title in favor of York subject to any to-be-determined interests of the Horners. Thus, the Horners were essentially part of York's quiet title action nonetheless.

Additionally, at the time of the court's decision in Adams, Adams' heirs had tendered the purchase price of the property as well as taxes paid since purchase, 129 S.W. at 21, which are essentially the costs to redeem the land under Section 140.340, or to set aside the tax deed under Section 140.600. The record contains no such attempt to tender the costs by the Horners, further distinguishing the present case from Adams to the extent it is applicable.

Indeed, York alleged that he discovered the Horners' possession of the disputed property only after he requested a partial boundary survey in 2015, after he had received the collector's deed. The Horners did not dispute this fact with supporting affidavits or exhibits; they simply argue York should have discovered their adverse possession of the disputed property prior to the tax sale.