Donald E. FEESE and Amusement Centers, Inc., Appellants,

v.

CITY OF LAKE OZARK, MISSOURI, et al., Respondents.

No. 77383.

Supreme Court of Missouri, En Banc.

Feb. 21, 1995.

Dale C. Doerhoff, Jefferson City, for appellants.

H. Ralph Gaw, Tipton, for respondents.

ROBERTSON, Judge.

This is another case involving Article X, Section 22(a) of the Missouri Constitution, a portion of the popularly dubbed Hancock Amendment. The issue in this case is

whether and to what extent a city, having issued revenue bonds to construct a sewer system, may broaden the application of its sewerage service charge structure without a vote of the people. The trial court found in favor of the city's authority to broaden the application of the sewerage service charge structure without a vote of the people. The court of appeals affirmed. We granted transfer because of the importance of the issue raised and have jurisdiction. Mo. Const. art. V, § 10. The judgment of the trial court is reversed and the cause remanded for further proceedings.

## I.

The essential facts are not in dispute. On June 7, 1983, the voters of the City of Lake Ozark (the City), a fourth-class city, approved a revenue bond issue in the amount of $3 million for the construction of a sewer system. In so doing, the voters authorized "the collection of rates, fees and charges *for the use of and services provided by* the city's sewerage system sufficient to pay the principle of and interest on said bonds." [Emphasis added.] On February 14, 1984, the Board of Aldermen of the City of Lake Ozark (the Board) adopted an ordinance authorizing the issuance of sewerage system revenue bonds in the amount of $2.5 million. Pursuant to the ordinance, the City assumed an obligation to "fix, establish, maintain and collect such rates, fees and charges *for the use of and services furnished by* or through the System as will produce revenues sufficient to . . . pay the cost of the operation and maintenance of the System, to pay the principle of and interest on the Bonds." [Emphasis added.] After a period of construction, the Board adopted another ordinance on January 13, 1987, establishing a schedule of monthly sewerage service charges for various "user types." The City did not base its sewerage service charges on actual sewerage use, but on an average monthly sewerage volume it estimated a particular type of user would discharge into the sewerage system.

Donald Feese and Amusement Centers, Inc., a corporation owned by Feese, are the appellants in this case and own rental property along Business 54 Highway in the City. The area is commonly called "the Strip." (For ease of reference, we shall refer to the appellants in this case as Feese.) Appellants lease units of their real property to businesses designed to attract tourists—a shooting gallery, a baseball batting cage, a miniature golf course, an arcade, and a t-shirt shop. At one time, Feese leased 30 units on the Strip to seasonal tenants; at present he has only six tenants. In addition to Amusement Centers, Feese owns the Feese Real Estate Company. Feese Real Estate operates in the City.

On October 11, 1988, the Board passed a resolution to "bill all businesses within 300 feet of the sewer, whether they have restrooms, sewer or not, except those physically unable to hook on." At the time of the lawsuit, the record shows that the City charged $35.20 per month for each of Feese's units, whether or not these units were physically hooked to the sewer system. The City requires that sewerage service charges be collected year round, whether or not tenants occupied the rental units on a year-round basis. Thus, each unit bore a sewerage service charge responsibility exceeding $422 annually even though the record suggests that the tenants occupied the units only between Memorial Day and Labor Day each year.

In April, 1991, Feese inquired of the Board as to how he could remove his units from the sewerage service charge. The Board advised Feese that if he removed all of the sewerage and water access fixtures from a unit—stools, sinks and tubs—the unit would be removed from the list of facilities receiving the City's billings for sewerage service charges. Although the record is not clear on this point, it appears that Feese tore down some buildings and removed plumbing fixtures from others in order to avoid the sewerage charges. Nevertheless, the City continues to lay claim to sewerage service charges imposed prior to the destruction of the buildings and the removal of the plumbing fixtures.

Feese filed an action seeking, inter alia, a declaration that the City's resolution impos-

ing sewerage service charges against property not actually connected to the sewerage system violated Article X, Section 22(a) of the Missouri Constitution. The trial court denied Feese relief.

## II.

Article X, Section 22(a) of the Missouri Constitution prohibits political subdivisions of the state "from levying any tax, license or fees [sic], not authorized by law, charter or self-enforcing provisions of the constitution ... above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that ... political subdivision voting thereon." Article X, Section 22(b), excludes "taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness or for the payment of assessments on contract obligations in anticipation of which bonds are issued which were authorized *prior to* the effective date of this section" from the requirements of Section 22(a). [Emphasis added.]

The voters approved these constitutional provisions on November 4, 1980. The voters of the City approved the bonds in this case on June 7, 1983. Thus, the broad exemption provided by Section 22(b) does not apply in this case.

Two issues require resolution: First, whether the sewerage service charge imposed by the City constitutes a "tax, license or fees [sic]" within the meaning of Section 22(a). Second, if the first question is answered in the affirmative, whether the question put to the voters at the time they approved the issuance of the revenue bonds was sufficiently broad to authorize the Board to impose the sewerage service charge it imposed here.

### A.

■ Whether a tribute demanded by a political subdivision of the state is a tax, license or fee within the meaning of Section 22(a) is a question that has defied bright-line resolution by this Court. In *Keller v. Marion County Ambulance District*, 820 S.W.2d 301, 304 n. 10 (Mo. banc 1991), the Court offered a five-pronged test to distinguish between the taxes, licenses and fees that require voter approval prior to an increase under Section 22(a) and user fees that the Court determined were not subject to the voter approval requirement. In *Beatty v. Metropolitan St. Louis Sewer District*, 867 S.W.2d 217 (Mo. banc 1993), we applied the *Keller* test to sewerage charges imposed by a political subdivision. When the calculus did not produce a definitive answer, we concluded that where a "genuine doubt exists as to the nature of the charge imposed by local government, we resolve our uncertainty in favor of the voter's right to exercise the guarantees they provided for themselves in the constitution." *Id.* at 221.

We need not repeat the *Keller* analysis of the sewerage service charges imposed by the City in this case. The facts are virtually identical to those of *Beatty* with one exception. Here, the City assesses its sewerage charges against property not connected to the sewerage system. The Metropolitan St. Louis Sewer District did not charge unconnected property. Under the second *Keller* prong, the City's policy militates more strongly in favor of a conclusion that the sewerage service charge here is a tax, license or fee that requires voter approval prior to any increase than did the Metropolitan St. Louis Sewer District charge.

On the strength of *Keller*, we hold that the sewerage service charges in this case are a tax, license or fee within the meaning of Section 22(a).

### B.

■ We turn to the second issue: Whether the question put to the voters at the time they approved the issuance of the revenue bonds was sufficiently broad to authorize the Board to impose the sewerage service charge it imposed here.

With language slightly modifying the mandate of Section 250.120.1, RSMo 1994 ("for

the use and services of the system"), the City asked its voters to approve the issuance of the revenue bonds, clearly warning them on the ballot itself that

> [t]he authorization of said bonds will authorize the collection of rates, fees and charges *for the use of and services provided by* the City's sewerage system sufficient to pay the principal of and interest on said bonds as they fall due and to provide for and maintain all contractual obligations incurred during the issuance of the bonds.

[Emphasis added.] Official Ballot: Bond Election, Lake Ozark, Missouri, Tuesday, June 7, 1983. The City's ordinance authorizing the bonds used the words "for the use of and services provided by."

In *Oswald v. City of Blue Springs*, 635 S.W.2d 332 (Mo. banc 1982), the voters of Blue Springs approved revenue bonds to extend and improve the waterworks and sewerage system. A resident of Blue Springs sued the City to prohibit it from raising water and sewerage rates without a vote of the people. This Court held that Section 22(a) did not prohibit the City from raising its water and sewerage rates without voter approval, concluding that among a variety of reasons supporting the holding, "most persuasively, logic demands the conclusion" that when voters approved the issuance of the revenue bonds, and thus authorized the board of aldermen to increase rates to retire the bond obligations, they also authorized increases necessary to maintain the system. *Oswald*, 635 S.W.2d at 334.

We agree with the City's contention that *Oswald* stands for the proposition that it may increase its sewerage service charges to meet its bond obligations without a vote. The authority to impose those charges is not without limit, however. It is cabined by, among other things, the voters' grant of authority to the City to collect charges "for the use of and services provided by the City's sewerage system."

Reduced to its essence, Feese's argument is that the City's extension of sewerage service charges to all property within three hundred feet of the sewer line, whether that property used the sewerage system or not, exceeds the authority the voters ceded to the City on June 7, 1983.

■ The City confesses that its ballot language was "an effort to comply with its mandatory duty as provided in Section 250.120.1." Respondent's Brief at 10. Thus, the slight modification of the statutory language on the ballot did not intend to broaden the City's authority beyond that permitted by the statute. The minor differences in wording aside, the parties cite and our independent research reveals no case defining the phrase "for the use and services of the system" in the context of Section 250.120.1. The words are plain, however, and not susceptible to the imaginings of the judicial mind. They contemplate direct use of the sewerage system; the person paying the charge imposed must receive a direct service from the system.

At its strongest point, the City's argument says no more than that the availability of the sewerage system is a benefit to all property owners, citing *Whitsett v. City of Carthage*, 270 Mo. 269, 193 S.W. 21 (1917), and *Lakewood Park Cemetery Association v. Metropolitan St. Louis Sewer District*, 530 S.W.2d 240 (Mo. banc 1975). Those cases stand for the proposition that a public entity may *tax* lands receiving no direct benefit from the construction of a sewerage system because the benefits of the sewerage system "are conferred upon the entire people of the district ... by virtue of its being [ ] made more desirable for business and residential purposes." *Whitsett*, 193 S.W. at 25. They do not support the City's contention, however, that it may impose a sewerage system charge on property not connected to the sewerage system under authority of language authorizing the collection of those charges "for the use and services of the system."

We hold that the City's broadening of its sewerage service charges to include property that is not connected with the sewerage system and does not receive a direct benefit

from that system exceeds the scope of the authority granted the City by the voters on June 7, 1983. Because such a charge is a tax, license or fee within the meaning of Section 22(a), and the City's resolution imposing it occurred after November 4, 1980, the voters must approve the broadening of the sewerage charge base before the City can impose it.

### III.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

COVINGTON, C.J., and BENTON, THOMAS, PRICE and LIMBAUGH, JJ., concur.

HOLSTEIN, J., concurs in result.