**GOLDEN DELTA ENTERPRISES,
Plaintiff/Appellant,**

v.

**CITY OF ARNOLD, Missouri,
Defendant/Respondent.**

**No. ED 84233.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 14, 2004.

Phillip Kent Gebhardt, Desoto, MO, for appellant.

Robert Kevin Sweeney, Kirkwood, MO, for respondent.

SHERRI B. SULLIVAN, J.

Golden Delta Enterprises (Appellant) appeals from the trial court's judgment denying Appellant's petition seeking a declaratory judgment regarding the non-existence of a sewer lien on certain real estate located in the City of Arnold (Arnold). We affirm.

*Factual and Procedural Background*

Appellant is an unincorporated business trust organization doing business in the State of Missouri. On March 12, 2003, Appellant acquired by Trustee's Deed certain property commonly known as 1919 Old Missouri State Road (hereinafter referred to as the Property) located within the corporate limits of Arnold. Appellant recorded the Property with the Jefferson County Recorder of Deeds on March 28, 2003.

Arnold is a municipal corporation organized pursuant to Chapter 77[1] as a third-class city in the State of Missouri. Arnold

---

**1.** All statutory references, referred to as both Chapter and Section, are to RSMo 2000, unless otherwise indicated.

was incorporated in September 1973. On May 20, 1999, Arnold passed an Ordinance No. 16.139, as required by statute, establishing a sanitary sewer district, known as the East–West Grandview Sanitary Sewer Subdistrict (hereinafter referred to as the Subdistrict). On March 16, 2000, Arnold enacted Ordinance No. 16.145 (hereinafter referred to as Ordinance No. 16.145 or the Ordinance). Ordinance 16.145 authorized a special tax bill to be issued allocating a share of the costs for the public work provided in constructing the sewers located within the geographic boundaries of the Subdistrict to the parcels of real property within the Subdistrict, including the Property.

Arnold maintains, and Appellant does not dispute, that there has been no challenge to the allocation of costs for the actual construction of the sanitary sewers within the Subdistrict. However, the assessment for the Property was not paid when due. Upon the sale of the Property, Arnold notified the title company that an assessment was due. Prior to trial of this matter, the assessment was not paid.

On May 6, 2003, Appellant filed its petition seeking a declaratory judgment that Arnold "failed to perfect any lien for sewer connection or user charges under § 250.234, RSMo, against [the Property] prior to the date of acquisition of said property by [Appellant] on or about March 12, 2003...." After a bench trial, the trial court denied Appellant's petition. This appeal follows.

## Points on Appeal

Appellant presents four points on appeal, each challenging the trial court's judgment in favor of Arnold, maintaining that the judgment was in error for the following reasons: (I) Appellant took title to the property free and clear of any lien or claim of Arnold under the Missouri Recording Statutes; (II) Appellant took title to the property free and clear of any lien or claim of Arnold under the "first in time, first in right" rule, as the lien evidenced by the 1999 Deed of Trust was superior or senior to the lien purportedly created by Ordinance No. 16.145 or by the issuance of a special tax bill in 2000, and the foreclosure of the 1999 Deed of Trust extinguished any perfected or unperfected lien, if any, in favor of Arnold purportedly created by Ordinance No. 16.145 or the issuance of a special tax bill under the Ordinance, and no statute provides for the priming of the Deed of Trust by the Ordinance or any special tax bill issued under said ordinance; (III) no substantial evidence supported a judgment that the Property was described in Ordinance No. 16.145 or the special tax bill issued under the Ordinance; and (IV) no substantial evidence was adduced proving that a valid special tax bill was issued evidencing a debt that was due and capable of supporting a lien against the property; therefore, under the "no debt, no lien" rule, there can be no outstanding lien against the property.

## Standard of Review

The standard of review in a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* Neither party in this case requested findings of fact or conclusions of law, nor did the trial court make any findings of fact. As such, Supreme Court Rule 73.01(a)(3) provides that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result

reached." *See also Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 394 (Mo.banc 2001).

### Discussion

■ Appellant maintains that it took title to the Property free and clear of any lien or claim of Arnold under both (1) the Missouri Recording Statutes and (2) the "first in time, first in right" rule. We discuss these two points together because they are both in error for essentially the same reason.

### The Missouri Recording Statutes and the "First in Time, First in Right Rule"

Appellant claims that after the March 12, 2003 foreclosure sale in which it acquired the Property, recorded on March 28, by Trustee's Deed in foreclosure of the equity of redemption under a certain Deed of Trust dated July 27, 1999 and recorded on August 2, 1999, it became aware of Arnold's claim for a sewer lien on the Property.

Appellant acknowledges that Ordinance No. 16.145, adopted on March 16, 2000, authorizes Arnold to issue special tax bills for sewer improvements. However, Appellant maintains that Arnold did not record any notice of the sewer lien in the Jefferson County Recorder of Deeds. Appellant asserts that no ordinances were in effect on August 2, 1999, the date the 1999 Deed of Trust was recorded, that purported to levy any assessments or liens against the Property for the sewers within the Subdistrict.

Appellant cites the following statutes in support of its point.

Section 442.380. Instruments to be recorded

Every instrument in writing that conveys any real estate, *or whereby any real estate may be affected,* in law or equity, proved or acknowledged and certified in the manner herein prescribed, *shall* be recorded in the office of the recorder of the county in which such real estate is situated.

Section 442.390. Notice imparted from time of filing for record

Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice.

Section 442.400. Not valid until recorded

*No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record.*

(Emphasis supplied by Appellant).

Appellant maintains that Ordinance No. 16.145 and/or the special tax bill issued under the authority of Ordinance No. 16.145 purport to be instruments in writing that affect real estate, and they were not recorded in the Jefferson County Recorder of Deeds prior to Appellant's purchase of the Property. As such, concludes Appellant, Appellant was a bona fide purchaser for value without actual notice of the unrecorded special tax bill or lien in favor of Arnold, and Appellant took the Property free and clear of any such bill or lien.

Appellant essentially argues that Arnold's assessment against the Property is akin to a real estate transaction requiring that an instrument be filed with the Recorder of Deeds. Appellant presents no authority for such a proposition. Rather, under Section 88.812, Arnold has a statutory right, as a third-class city, to subject certain properties to a special tax:

Section 88.812. Special assessments for improvements authorized—plans and cost estimates, publication of—public hearing required, when—attorney and engineering fees, limit on—lien, duration of

In all third class cities, fourth class cities, towns and villages, and all cities having a constitutional charter or a special charter, the assessments made for constructing and repairing sidewalks and sidewalk curbing, and for sewers, and for grading, paving, excavating, macadamizing, curbing and guttering of any street, avenue, alley, square, or other highway, or part thereof, and repairing the same, or for any other improvement ... *shall be known as "special assessments for improvements", and shall be levied and collected as a special tax, and a special tax bill shall issue therefor and be paid in the manner provided by ordinance....* all the tax bills shall become due and payable sixty days after the date of issue thereof, except in the case of tax bills payable in installments as herein provided; and, *every special tax bill shall be a lien against the lot or tract or parcel of land described in said special tax bill for a period of ten years after date of issue....*

(Emphasis supplied by the Court). Appellant is essentially disclaiming responsibility to pay for an improvement that benefited his property, just like it benefited all the other properties in the Subdistrict.

Appellant also claims that under the "first in time, first in right" rule the lien evidenced by the 1999 Deed of Trust was superior or senior to the lien purportedly created by Ordinance No. 16.145 or by the issuance of a special tax bill thereunder in 2000. Appellant argues that the foreclosure of the 1999 Deed of Trust extinguished any perfected or unperfected lien in favor of Arnold purportedly created by Ordinance No. 16.145 or the issuance of a special tax bill under the Ordinance.

For those unfamiliar with the colloquial phrase "first in time, first in right," the Uniform Commercial Code (UCC), which has been adopted in this state, provides the rules to be applied in determining the priority of conflicting security interests. *First Nat. Bank of Steeleville, N.A. v. Erb Equipment Co., Inc.,* 921 S.W.2d 57, 61 (Mo.App. E.D.1996). The primary rule is that "[c]onflicting security interests rank according to priority in time of filing or perfection." *Id.;* Section 400.9–312(5)(a).

Once again, Appellant presents no authority that special tax bills issued for improvements made by third-class cities under Section 88.812 are subject to the "first in time, first in right" rule of perfecting a security interest. The special tax bill at issue has no other requirements for its issuance than those set forth under Chapter 88. The special tax bill at issue was issued on March 16, 2000, and is a lien against the Property for ten years. Section 88.812. It is merely a tax bill assessed against the Property that Appellant owns for improvements to the Property. The Property has benefited from the improvements made within the Subdistrict and now Appellant has to pay the bill for those improvements. Appellant's first two points on appeal are denied.

■ In its third point, Appellant claims that no substantial evidence supported a judgment that the Property was described in Ordinance No. 16.145 or the special tax bill issued thereunder.

Section 88.812 and Section 7 of Ordinance No. 16.140 require special tax bills to describe each lot or tract or parcel of land assessed. Section 217 of Ordinance No. 16.145 describes the Property as follows:

Against Maxville Terrace

With parcel identification number 019.030.02002027

Belonging to Lawrence M. Kempf and wife

Assessment: $5,687.91

Appellant maintains that this identification of the Property does not contain any recitation of the full legal description of the Property. Appellant cites *Podlesak v. Wesley*, 849 S.W.2d 728 (Mo.App. S.D. 1993), in which the evidentiary foundation for describing real estate by a tax assessor's parcel identification number was discussed. Appellant maintains that the *Podlesak* court stated that a parcel identification number was insufficient. However, the *Podlesak* court also stated that:

There was no evidence or showing, however, as to what information is available through the land parcel identification numbers in the assessor's office to assist in identifying the property intended to be conveyed. This is especially pertinent since reference to extrinsic evidence is permissible and one of the affidavits indicated the property could be located.

If the land description is sufficiently definite that one reasonably skilled in determining land locations can locate it, it is sufficient. *Mason v. Whyte*, 660 S.W.2d at 386.

*Id.* at 732. In the instant case, the unrefuted testimony of Arnold City Administrator John Brazeal (hereinafter referred to as Brazeal) established that the Property was within the Subdistrict. The trial court apparently found Brazeal's testimony to be credible. Appellant argues that no evidentiary foundation was laid that would allow the trial court to conclude that the Property was described by the Jefferson County Assessor's parcel identification number shown in Section 217 of Ordinance No. 16.145. However, Appellant does not specify how no foundation was laid but merely cites to the portion of the transcript where Appellant objected to Brazeal's testimony on the basis of lack of foundation. The trial court allowed Brazeal to testify over Appellant's objection and apparently found Brazeal's testimony to be credible. We defer to the trial court's findings on the matter of the credibility of witnesses. *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App. E.D.1998). Point denied.

In his fourth and last point, Appellant maintains that no substantial evidence was adduced proving that a valid special tax bill was issued evidencing a debt that was due and capable of supporting a lien against the property; therefore, under the "no debt, no lien" rule, there can be no outstanding lien against the property.

Appellant points out the portion of Section 88.812 that provides that a special tax bill becomes a lien sixty (60) days after its issuance, "except in the case of tax bills payable in installments as herein provided." Appellant maintains that the statute is silent on when the lien of a special tax bill payable in installments begins, and that there is no evidence in this case as to when the special tax bill in question was issued. Appellant claims that the special tax bill issued by the City Clerk was not introduced into evidence, and that Exhibit E showed a partial payment. Thus, Appellant argues one can assume that the special tax bill was one due in installments, and since there was no evidence that the holder of the tax bill accelerated the amount due, then the amount of the debt purportedly owed to Arnold is not accurately reflected in Exhibit E. Without a debt being established by the evidence, reasons Appellant, citing *Goetz v. Selsor*, 628 S.W.2d 404, 406 (Mo.App. S.D.1982), there can be no lien.

This argument is without merit for several reasons. We shall only point out a few. Ordinance No. 16.145 is the special tax bill, and it was admitted into evidence as Exhibit D. The special tax bill was issued on March 16, 2000. Exhibit E is not a special tax bill. Exhibit E is a bookkeeping notice issued in the ordinary course of business to inform an individual or entity that a special tax assessment is now due and owing.

Again, the trial court found, and we discern no error in its finding, that Ordinance No. 16.145 conformed to the requirements of issuing a special tax bill under Chapter 88 for improvements made to the Subdistrict, of which the Property was a part. Once the tax bill was issued, it became a lien on the Property for a period of ten years. The special tax bill at issue was issued on March 16, 2000, and is a lien against the Property for ten years thereafter. Section 88.812. Point denied.

The judgment of the trial court is affirmed.[2]

GARY M. GAERTNER, SR., P.J., and BOOKER T. SHAW, J., concur.

---

2. We note that the judiciary is not in a position to create a statutory requirement where there is none. If the legislature wanted to put a recording requirement in Chapter 88 it could have, but did not.