In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

ECLIPSE PROPERTY DEVELOPMENT LLC, ) No. ED109298
 )
 Appellant, ) Appeal from the Circuit Court
 ) of Jefferson County
vs. )
 ) Honorable Troy A. Cardona
FAREED AMMARI, ET AL., )
 )
 Respondents. ) FILED: September 21, 2021

 Introduction

 The issues presented on appeal address the validity and priority of unpaid sewer fees

charged against property owners by a statutorily-created public sewer district. Eclipse Property

Development, LLC (“Eclipse”) appeals from the trial court’s grant of summary judgment to the

Northeast Public Sewer District (the “District”) ordering satisfaction of the District’s lien for

unpaid sewer fees on property purchased by Eclipse at a delinquent tax sale (the “Property”).

Eclipse raises two points on appeal. Eclipse first challenges the trial court’s judgment that it pay

the sewer lien by characterizing the base user sewer fee as a tax subject to the voting approval

requirements of the Hancock Amendment in the Missouri Constitution, Article X, Section 22(a).

Eclipse next argues that the trial court erred because under Section 140.4201 the District’s sewer

lien is inferior to the general real estate tax lien and thus did not survive foreclosure of the

1
 All Section and Chapter references are to RSMo (2016), unless otherwise indicated.
general lien release when Eclipse obtained the collector’s deed from Jefferson County (the

“County”). Because the base user sewer fee is charged only to properties connected to the

District’s sewer service line, the District’s base sewer fee is not an unconstitutional tax, and is

properly charged to the Property. Because Section 249.255 gives the District’s sewer liens

special priority and enforcement status equal to state and county tax liens, the District’s

unrecorded lien was not extinguished by the County tax sale. Accordingly, we affirm the trial

court’s judgment.

 Factual and Procedural History

 Our review of the summary-judgment record shows that Eclipse purchased the Property

at a delinquent tax sale and obtained the collector’s deed from the County in March 2018. In

April 2018, Eclipse filed a petition seeking declaratory judgment to confirm the tax sale and to

quiet title to the Property against various parties who either claimed to have an interest in the

Property or who may possibly assert an interest in the Property. Eclipse also included a claim for

ejectment in the petition. The District was not a named party to the petition.

 The District is a statutorily-created public sewer district located in the County organized

under Chapter 204. The District sent Eclipse a bill in January 2019 for unpaid sewer fees on the

Property at a base user fee of $31.73 per month. The unpaid fees dated back to April 16, 2015,

for a total of $2,343.68 in unpaid fees. The District explained that the base user fee is calculated

to support and maintain the operation, administration, and infrastructure of the individual sewer

lines and overall sewer system. The District charges the base fee only to properties that access

the sewer service line. Not all properties within the District are connected to the sewer service

line. A property owner may disconnect a property from the sewer service line. To do so, the

District performs an inspection, which it provides free of charge, following which the District

caps off the infrastructure connecting the property to the sewer line.
 2
 The Public Water Supply District No. 2 of the County terminated water service to the

Property in March 2012. The Property has not used metered water service since that time.

Correspondingly, Eclipse suggests, and there is no evidence to the contrary, that the Property has

since not used sewer service. The Property was connected to the sewer service line in March

2012 and remained connected to the sewer service line throughout the period claimed for unpaid

sewer fees.

 After the District sent its bill for unpaid sewer fees, Eclipse amended its petition to add

the District as a party-defendant. The District filed a lien against the Property for the unpaid

sewer fees in the amount of $3,528.45. With regard to its declaratory-judgment claim, Eclipse

noted that the District only recorded, noticed, and asserted any lien on the Property on March 15,

2019, eleven months after Eclipse filed the initial petition. The trial court granted Eclipse a

default judgment and interlocutory order of default against all defendants except the District.

 Eclipse then moved for partial summary judgment against the District on its claims for

declaratory judgment and quiet title. The District cross-moved for summary judgment.2 The

trial court entered an order and judgment granting the District’s motion for summary judgment

and denying Eclipse’s motion for partial summary judgment. The trial court ordered Eclipse to

pay the District’s lien for unpaid sewer fees for the Property in the amount of $3,528.45. Eclipse

now appeals.

 Jurisdiction

 Before addressing the merits of this appeal, we first must determine whether we have

jurisdiction. First Nat’l Bank of Dieterich v. Pointe Royale Prop. Owners’ Ass’n, Inc., 515

S.W.3d 219, 221 (Mo. banc 2017) (citing Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc

2
 After amending its petition, Eclipse again moved for partial summary judgment, and the District again cross-
moved for summary judgment.

 3
1997)). An appeal only lies from a final judgment resolving all issues in the case. See id.

(internal citation omitted). However, Rule 74.01(b)3 authorizes a trial court to enter judgment on

fewer than all claims and certify that judgment as a “final judgment” for purposes of appeal

where there is no just reason for delay. Id. at 221–22. We apply the following four-factor test to

determine whether Rule 74.01(b) certification for appeal is proper:

 (1) whether the action remains pending in the trial court as to all parties; (2) whether
 similar relief can be awarded in each separate count; (3) whether determination of
 the claims pending in the trial court would moot the claim being appealed; and (4)
 whether the factual underpinnings of all the claims are intertwined.

Mo. Land Dev. I, LLC v. Raleigh Dev., LLC, 407 S.W.3d 676, 685 (Mo. App. E.D. 2013)

(internal citation omitted).

 “Ordinarily, the denial of a motion for summary judgment will not be reviewed on

appeal.” Behrick v. Konert Farms Homeowners’ Ass’n, 601 S.W.3d 567, 573 (Mo. App. E.D.

2020) (internal quotation omitted). “Where, however, the material facts are undisputed and the

merits of the denied cross-motion for summary judgment are inextricably intertwined with the

issues raised in the granted motion for summary judgment, the merits of the denial of the cross-

motion may be reviewed on appeal.” Id. (internal quotation omitted).

 In the matter before us, not all of the claims pending before the trial court were resolved

with the trial court’s judgment. Although the judgment disposed of all claims between Eclipse

and the District related to tax sale confirmation, quiet title, and declaratory judgment, there

remain unadjudicated claims for breach of deed and warranties of title against the County and its

tax trustee. Those claims seek contribution from the County as a third-party defendant and do

not directly affect the issues on appeal and cannot moot the appeal. See Bank of Birch Tree v.

Am. Mod. Home Ins. Co., 561 S.W.3d 439, 442 (Mo. App. S.D. 2018) (finding adjudication of

3
 All Rule references are to Mo. R. Civ. P. (2021), unless otherwise indicated.

 4
third-party claims for contribution or indemnification by cross-motion for summary judgment

was not a distinct judicial unit for appeal when the underlying claims remained pending).

 Although Eclipse’s claims against the County remain pending before the trial court,

Eclipse maintains the trial court’s judgment is final for purposes of appeal under Rule 74.01(b).

The record is clear that the remaining claims in the trial court are not pending as to all parties but

only to the County. Because similar relief cannot be awarded in each count, the remaining

claims against the County would not moot this appeal. Because the factual underpinnings of

Eclipse’s claims against the County and the District are not inextricably intertwined, the trial

court properly certified the judgment as a final judgment under Rule 74.01(b). See Mo. Land

Dev. I, LLC, 407 S.W.3d at 685. Therefore, we have jurisdiction to hear the appeal. See

Dietrich, 515 S.W.3d at 221 (citing Gibson, 952 S.W.2d at 244).

 Points on Appeal

 Eclipse raises two points on appeal. Point One asserts the trial court erred in granting

summary judgment to the District, denying partial summary judgment to Eclipse, and ordering

Eclipse to pay the sewer lien because the unpaid sewer fees at the base charge of $31.73 monthly

are invalid in that the fee is a disguised or hidden tax subject to the voter approval requirements

of the Hancock Amendment. Point Two claims the trial court erred because under Section

140.420 the District’s lien is inferior to the general real estate tax lien and thus did not survive

the foreclosure on the general release tax lien when Eclipse obtained the collector’s deed.

 Standard of Review

 The standard of review on appeal regarding summary judgment is essentially de novo.

York v. Horner, 564 S.W.3d 641, 644 (Mo. App. E.D. 2018) (internal citation omitted).

We will uphold the trial court’s ruling on summary judgment if there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. Id. (citing Rule

 5
74.04(c)). “We review the record in the light most favorable to the party against whom judgment

was entered, taking uncontradicted facts in support of the motion as true and according the non-

movant the benefit of all reasonable inferences from the record.” Id. (internal citation omitted).

“We will affirm the trial court’s granting of summary judgment if it is correct as a matter of law

on any grounds.” Behrick, 601 S.W.3d at 573 (citing Rice v. Shelter Mut. Ins. Co., 301 S.W.3d

43, 46 (Mo. banc 2009)).

 Further, “[w]here an issue of statutory interpretation is preserved and presented in accord

with the rules of appellate procedure, our review of that issue on appeal from summary judgment

is de novo.” Real Est. Recovery, LLC v. Branson Hills Facility Infrastructure Cmty.

Improvement Dist., 614 S.W.3d 541, 550 (Mo. App. S.D. 2020) (citing Sofia v. Dodson, 601

S.W.3d 205, 209 (Mo. banc 2020)). Likewise, constitutional interpretation is reviewed as a

matter of law. Mo. Prosecuting Att’ys v. Barton Cnty., 311 S.W.3d 737, 741 (Mo. banc 2010).

 Discussion

I. Point One—The District’s Base User Sewer Fee is Not a Disguised Tax Under the
 Hancock Amendment4

 In construing a constitutional provision, we “use[] the same rules that apply to statutory

construction, except the former are given a broader construction due to their more permanent

character.” MOSERS v. Salva, 504 S.W.3d 748, 751 (Mo. App. W.D. 2016) (citing Barton

Cnty., 311 S.W.3d at 741). “The primary goal in interpreting a constitutional provision is to

ascribe to the words of the provision the meaning that the people understood them to have when

the provision was adopted.” Id.

4
 Although this Court has limited jurisdiction to address issues of constitutional interpretation, because this appeal
raises a question of constitutional interpretation that previously has been addressed by the Supreme Court of
Missouri, we have jurisdiction. See D.E.G. v. Juv. Officer of Jackson Cnty., 601 S.W.3d 212, 216 n.2 (Mo. banc
2020) (internal quotation omitted) (“If the United States Supreme Court or Missouri Supreme Court has addressed a
constitutional challenge, the claim is merely colorable and the intermediate appellate court has jurisdiction.”).

 6
 Article X, Section 22(a) of the Missouri Constitution prohibits political subdivisions of

the state “from levying any tax, license or fees, not authorized by law, charter or self-enforcing

provisions of the constitution . . . above that current levy authorized by law or charter when this

section is adopted without the approval of the required majority of the qualified voters of that . . .

political subdivision voting thereon.’” Mo. Const. art. X, section 22(a); Feese v. City of Lake

Ozark, Mo., 893 S.W.2d 810, 812 (Mo. banc 1995). The Hancock Amendment by its plain

language “prohibits political subdivisions from levying new or increased taxes” absent voter

approval. Zweig v. Metro. St. Louis Sewer Dist., 412 S.W.3d 223, 232 (Mo. banc 2013)

(emphasis omitted). In contrast, the Hancock Amendment “was not intended to apply to actions

that cannot fairly be characterized as a levy.” Id. (citing Keller v. Marion Cnty. Ambulance

Dist., 820 S.W.2d 301, 304 (Mo. banc 1991)). “In ordinary usage, a tax is levied, but a fee is

charged.” Id. (quoting Keller, 820 S.W.2d at 303). “Reading ‘levy’ in this ordinary sense—as a

term related to the power of government to impose a tax—it is clear that a ‘fee’ can only be

levied if the ‘fee’ is actually a tax.” Id. at 232–33 (quoting Keller, 820 S.W.2d at 303). “In other

words, the verbs ‘levy’ and ‘levying’ are used in section 22(a) to refer to actions that create an

obligation to pay that is not contingent upon each payer’s actual use of the political subdivision’s

service.” Id. “[I]f the political subdivision ties its charge to the use of the political subdivision’s

service, and if it charges this fee to all who use its service, it is likely that the political

subdivision is setting the price for rendering its services to individual users and voter approval

under section 22(a) is not required.” Id. at 236. “But if the political subdivision ties the fee to

residency or ownership instead of use, the charge is not a user fee and prior voter approval is

required.” Id.

 7
 Keller offered several criteria to aid in determining “whether the charge is closer to being

a ‘true’ user fee or a tax denominated as a fee.” Id. at 233 (quoting Keller, 820 S.W.2d at 304

n.10). Zweig presented the five criteria in the following order: (1) whether the political

subdivision is providing a service in exchange for the charge; (2) whether the charges are paid by

all or almost all the residents of the political subdivision or by those who actually use the good or

service for which the fee is charged; (3) whether the charge is paid only on or after provision of a

good or service; (4) whether the charge is more or less dependent on the level of goods or service

provided to the fee payer; and (5) whether the service is historically and exclusively

governmental. Id. at 234–40 (citing Keller, 820 S.W.2d at 304 n.10). No single criterion is

determinative, and the criteria are not a set checklist but rather an aid in determining the fee’s

categorization. See id. at 233–34.

 In Feese, the property owner argued that the city’s imposition of a sewer service charge

against property not connected to the sewer system violated the Hancock Amendment. Feese,

893 S.W.2d at 811–12. The Supreme Court agreed, distinguishing the case from the situation in

which a sewer district imposes a sewer charge against all properties connected to the sewer

system. Id. Feese reasoned that the city’s imposition of the sewer charge against properties not

connected to the sewer system was a tax within the meaning of Section 22(a). Id. (citing Keller,

820 S.W.2d at 304 n.10).

 Similarly, in Zweig, the Supreme Court determined the sewer district’s stormwater

charge imposed on all properties in the district was a disguised tax under the Hancock

Amendment. 412 S.W.3d at 244. As Eclipse accurately summarizes, pertinent characteristics of

the stormwater charge in Zweig included that the charge was based upon the amount of

impervious area on the property owner’s land, that there was no way to measure any individual

 8
property’s use of the storm water drainage system, and that the land would be charged even

though it was not connected to the stormwater drainage system. Id. at 228–30. Zweig weighed

the Keller criteria and determined that the availability of drainage and oversight service was to

the district as a whole. Id. at 237. Zweig found that the stormwater charge imposed on the

property was neither a charge for a property owner’s actual use of the drainage system nor for

the use of the sewer district’s oversight services, which were rendered as needed, regardless of

whether or not that property owner paid the stormwater charge. Id. at 234, 236. Further, Zweig

noted the sewer district could not link the obligation to pay the stormwater charge to an

individual property owner’s use of the sewer district’s “availability” of service because the

service was rendered to the district as a whole, not to individual property owners. Id. at 237. In

other words, Zweig found that sewer district’s stormwater charge was tied to property

ownership. Id. Zweig emphasized the inability of property owners to do, or refrain from doing,

anything to reduce or eliminate the obligation to pay the stormwater charge. Id. Given these and

other characteristics of the stormwater charge, Zweig concluded the charge was more like a tax

and thus was subject to the Hancock Amendment’s voter approval requirements. Id. at 244.

 Eclipse argues that the District’s base sewer fee constitutes a tax because the fee is

applied to all properties regardless of actual sewer usage, including the subject Property. Eclipse

directs us to the summary-judgment record, which contains an uncontroverted statement of fact

that the Property did not use the sewer service line since 2012. However, the summary-judgment

record also contains an uncontroverted statement of fact that the Property remained connected to

the sewer service line for the relevant time period of the sewer fees dating back to April 2015.

That the Property was connected to the District’s sewer line clearly distinguishes the matter

 9
before us from Feese because in Feese the sewer district imposed its sewer charge against a

property that was not connected to the sewer system. See Feese, 893 S.W.2d at 812.

 We also distinguish this matter from Zweig, because the base sewer fee imposed could

have been eliminated had the Property been disconnected from the District’s sewer service line

and had its sewer service capped off. See Zweig, 412 S.W.3d at 237. Instead, both before and

after being acquired by Eclipse, the Property remained connected to the District’s sewer service

line, such that availability of sewer service attributable to individual properties was ascertainable

and determinative. This factual scenario radically differs from that in Zweig, where stormwater

services were rendered regardless of whether the properties were connected to the stormwater

drainage system or paid the stormwater charge. See id. at 234, 236–37. Here, the District

charges the base user fee only with regard to properties that maintain access to the sewer

services.5

 The summary judgment record presents uncontroverted evidence that the District did not

and does not impose the base sewer fee against any property that is not connected to the sewer

5
 Although the parties do not rely on 249.255.2 for their arguments, we briefly discuss how Subsection 2 supports
the holding in this opinion. Subsection 2 provides:

 Should the sewer charges of a public sewer district created and organized pursuant to constitutional
 or statutory authority remain unpaid for a period in excess of three months, the district, after notice
 to the customer by certified mail, shall have the authority at its discretion to disconnect the
 customer's sewer line from the district's line or request any private water company, public water
 supply district, or any municipality supplying water to the premises to discontinue service to the
 customer until such time as the sewer charges and all related costs of this section are paid.

Section 249.255.2. The statute gives a public sewer district “discretion” to address unpaid sewer fees by
disconnecting the property from the sewer line or directing the water company to discontinue service, which would
impact the property’s use of the sewer line. See id. The plain and ordinary meaning of “discretion” conveys that
these methods for enforcing payment of sewer charges are optional rather than required, thus the sewer district is not
obligated to take these steps before continuing to charge the base user fee or filing a lien against the property. See
id.; State ex rel. Robison v. Lindley-Myers, 551 S.W.3d 468, 474 n.4 (Mo. banc 2018) (internal quotation omitted)
(“It is the general rule that in statutes the word ‘may’ is permissive only, and the word ‘shall’ is mandatory.”).
Indeed, Subsection 2 in no way limits the authority granted to the sewer district in Subsection 1 to file a lien against
a property for unpaid sewer fees, nor does it set forth any obligation for the sewer district to take other steps rather
than charging the base user fee for connected properties. See 249.255.1–2; Robison, 551 S.W.3d at 474 n.4.

 10
service line. Equally uncontroverted in the summary-judgment record is that the availability of

the sewer service supporting the base fee is tied directly to a property’s access to the sewer

service line over which a property owner has the ability to reduce or eliminate payment

obligations. Applying the relevant Keller criteria to the summary judgment record leads us to

conclude the District’s base sewer fee is not a levied tax subject to the Hancock Amendment.

See Zweig, 412 S.W.3d at 236 (citing Keller, 820 S.W.2d at 304 n.10); Feese, 893 S.W.2d at

812. Therefore, the trial court did not err in granting summary judgment to the District. See

Branson Hills, 614 S.W.3d at 550; York, 564 S.W.3d at 644. Point One is denied.

II. Point Two— The District’s Sewer Lien Has Priority and Was Not Extinguished

 Our “primary rule of statutory interpretation is to give effect to the legislative intent as

reflected in the plain language of the statute at issue.” Branson Hills, 614 S.W.3d at 550

(quoting Harpagon MO, LLC v. Bosch, 370 S.W.3d 579, 583 (Mo. banc 2012)). “The

provisions of a legislative act must be construed and considered together and, if possible, all

provisions must be harmonized and every clause given some meaning.” Id. at 552 (quoting

Dickemann v. Costco Wholesale Corp., 550 S.W.3d 65, 68 (Mo. banc 2018)). “[O]ur Supreme

Court specifically directs that in construing ‘[C]hapter 140 [(the Jones-Munger Act)], the words

must be considered in context and sections of the statutes in pari materia, as well as cognate

sections, must be considered in order to arrive at the true meaning and scope of the words.’” Id.

(quoting Harpagon, 370 S.W.3d at 584) (third alteration in original). “Pari materia ‘requires that

statutes relating to the same subject matter be construed together even though the statutes are

found in different chapters and were enacted at different times.’” Id. at 550 (quoting State ex rel.

Dir. of Revenue, State of Mo. v. Gaertner, 32 S.W.3d 564, 566 (Mo. banc 2000)). “[W]here one

statute deals with a subject in general terms and another deals with the same subject in a more

minute way, the two should be harmonized if possible, but to the extent of any repugnancy
 11
between them the definite prevails over the general.” Id. at 555 (quoting Gaertner, 32 S.W.3d at

566).

 Section 249.255 prescribes how we must treat a lien imposed against a property by a

public sewer district for unpaid sewer charges:

 Should a public sewer district created and organized pursuant to constitutional or
 statutory authority place a lien upon a customer’s property for unpaid sewer
 charges, the lien shall have priority as and be enforced in the same manner as
 taxes levied for state and county purposes.

Section 249.255.1 (emphasis added). Section 249.255 “expressly gave [a statutorily-created

sewer district] the power to collect and enforce the collection of sewer charges from the property

served . . . . necessarily includ[ing] the power to impose a lien for those charges[.]” St. Louis

Inv. Props., Inc. v. Metro. St. Louis Sewer Dist., 873 S.W.2d 303, 307, 307 n.1 (Mo. App. E.D.

1994) (noting “[d]elinquent service charges of statutory sewer districts are liens on the property

served”).

 “The legislature has the power to change the priorities of liens and to give a statutory lien

priority over other liens.” Id. (internal citation omitted); see also Collector of Revenue of St.

Louis v. Parcels of Land Encumbered With Delinquent Tax Liens Land Tax Suit 178, 533

S.W.3d 816, 822 (Mo. App. E.D. 2017) (finding that while public policy dictates dependent

children must be maintained, the trial court lacked statutory authority to give the family

division’s unpaid child-support lien special priority status over a prior recorded judgment lien

when distributing the proceeds from the sale of real estate). In St. Louis Inv., we recognized that

Section 249.255 prioritized liens for unpaid sewer charges the same as state and county taxes.

873 S.W.2d at 306 (citing Gershman Inv. Corp. v. Duckett Creek Sewer Dist., 851 S.W.2d 765,

769 (Mo. App. E.D. 1993) (noting, however, that Section 249.255 did not apply retrospectively

to give the sewer liens priority over deeds of trust recorded before the statute’s enactment)). “It

 12
is settled law that state tax liens are superior to all other liens.” Gershman, 851 S.W.2d at 768

(internal citations omitted). Because Section 249.255’s language unequivocally gives sewer

liens the same priority as state and county tax liens, “sewer liens placed on the property after the

enactment of the statute will have priority [over deeds of trust].” Id. at 769; see also Simms v.

Nationstar Mortg., LLC, No. 4:14-CV-243 CAS, 2014 WL 1515881, at *7 n.5 (E.D. Mo. Apr.

18, 2014) (interpreting Section 249.255.1 to find that a sewer district’s lien must be removed

from a property the same way as a county tax lien and not through a quiet-title action).

 In applying the priority and enforceability of sewer tax liens, Missouri courts have found

that an unrecorded special tax sewer lien has priority over an earlier-recorded trustee’s deed

following a foreclosure sale. Golden Delta Enters. v. City of Arnold, 151 S.W.3d 119 (Mo. App.

E.D. 2004). In Golden Delta, the property owner acquired the property in a foreclosure sale and

obtained a trustee’s deed. Id. at 122. The city filed a sewer lien against the property for

delinquent payment of a special assessment for sewer improvements after the foreclosure sale

and issuance of the trustee’s deed. Id. Although Missouri’s recording statutes declare a real

estate instrument is not valid until recorded, and thus failure to record forfeits priority, Golden

Delta held that the more specific statutes for special assessments applied over general recording

statutes. Id. at 122–23 (citing Sections 88.812, 442.400). We held in Golden Delta that the

city’s right to satisfy a special tax sewer bill was granted priority by statute, thus the lien against

the property was not subject to the “first in time, first in right” rule of perfecting a security

interest. Id. We recognized that the legislature exercised its power to exempt special

assessments from the recording statutes under Section 88.812. See id. (noting “[t]he special tax

bill at issue has no other requirements for its issuance than those set forth under Chapter 88”).

 13
Thus, the city could recover on its sewer lien despite not having recorded the lien prior to the

trustee’s deed. See id.

 The facts before us are remarkably similar to those presented in Golden Delta. Here,

Eclipse purchased the Property at a delinquent tax sale, then obtained a collector’s deed from the

County. Only after Eclipse purchased the Property and obtained the collector’s deed did the

District file a lien for unpaid sewer charges. The question before us is whether the priority and

enforcement mandate in Section 249.255.1 permits the District’s sewer lien to survive the tax

sale such that the trial court properly held Eclipse must satisfy the sewer lien.

 The District argues the analysis in Golden Delta should govern the outcome of this

appeal. The District posits that because sewer liens are statutorily granted the same priority and

enforceability as state taxes under Section 249.255, its sewer lien was superior in priority to the

collector’s deed despite being recorded later in time. See id. at 122–23. The District further

reasons that sewer liens are not extinguished by delinquent tax sales, just as they are not

extinguished by general foreclosure sales as in Golden Delta. See id.

 Generally, a delinquent tax sale extinguishes all other liens against the foreclosed

property. See McMullin v. Carter, 639 S.W.2d 815, 817 (Mo. banc 1982) (internal citation

omitted); see, e.g., Collector of Revenue by and through the Dir. of Collections for Jackson Cnty.

v. Parcels of Land Encumbered with Delinquent Land Tax Liens, 453 S.W.3d 746, 755–56 (Mo.

banc 2015) (finding a mechanic’s lien is a property interest comparable to that of a mortgage lien

and is extinguished by a tax sale); York, 564 S.W.3d at 645 (denying relief to adverse-possession

claimants who were entitled to seek redemption of the property sold in a tax sale but failed to do

so); Bank of New York v. Yonts, 388 S.W.3d 560, 564–65 (Mo. App. S.D. 2012) (finding a bank

holding a deed of trust was not entitled to set aside a valid tax sale); Dean Realty Co. v. City of

 14
Kansas City, 85 S.W.3d 83, 89 (Mo. App. W.D. 2002) (noting a tax sale extinguished the city’s

right to satisfy its demolition debt against the property). Tax sales are distinguished from general

foreclosure sales, and specific statutes govern the effect of a collector’s deed issued to a

purchaser who acquired the property by paying its delinquent taxes. See Chapter 140 (the

“Jones-Munger Act”). The Jones-Munger Act governs tax sales of properties with unpaid taxes.

York, 564 S.W.3d at 644. Here, the County has adopted the Jones-Munger Act, thus its

provisions apply to this appeal. See id.

 Historically, “[b]efore the Jones-Munger Act, the lien for taxes was foreclosed by suit.”

McMullin, 639 S.W.2d at 817 (internal quotation omitted). “If inferior lien holders were made

parties to the suit, their liens were extinguished.” Id. (internal quotation omitted). “Jones-

Munger substituted an administrative proceeding for the judicial foreclosure and instead of being

made parties to the suit, lienholders are notified by publication.” Id. at 817–18. “[W]here the

collector follows the publication procedure, the collector and the purchaser cannot be at fault for

failing to include interested parties in the tax sale process.” York, 564 S.W.3d at 647.

 “Section 140.405 sets forth the requirements with which a purchaser of property sold

under a third-offering delinquent land tax auction must comply in order to procure a collector’s

deed.” Brock v. Caldwell, 358 S.W.3d 542, 544 (Mo. App. S.D. 2012). “If all such

requirements are met and there is no redemption within the applicable period, a purchaser may

acquire a collector’s deed vesting in the purchaser an absolute estate in fee simple.” Id. (citing

Sections 140.405, .420). The purchaser may then sue to quiet title, naming all interested

defendants, after which “no outstanding unrecorded deed, mortgage, lease or claim shall be of

any effect as against the title or right of the complainant[.]” York, 564 S.W.3d at 645 (quoting

Section 140.330.1). Before the collector issues the collector’s deed to the purchaser at a

 15
delinquent tax sale, the purchaser “shall . . . pay all taxes that have accrued thereon since the

issuance of said certificate, or any prior taxes that may remain due and unpaid on said property,

and the lien for which was not foreclosed by the sale under which such [purchaser] makes

demand for deed[.]” Section 140.440. Important to this appeal, Section 140.420 provides that

when a purchaser obtains a collector’s deed following a delinquent tax sale, title passes free and

clear to the purchaser, “subject, however, to all claims thereon for unpaid taxes except such

unpaid taxes existing at time of the purchase of said lands and the lien for which taxes were

inferior to the lien for taxes for which said tract or lot of land was sold.” Relatedly, Section

140.460.2 recognizes that a collector’s deed is prima facie evidence that all the delinquent taxes

were paid. See Braun v. Petty, 129 S.W.3d 449, 453 (Mo. App. E.D. 2004) (internal citation

omitted) (noting a collector’s deed is prima face evidence of good title, but parties with a

competing interest have a right to challenge the validity of the collector’s deed).

 Here, the District does not challenge the validity of the collector’s deed or that all inferior

liens were extinguished. See Sections 140.420, .460.2. Indeed, Section 140.440 requires the

purchaser to pay all prior unpaid taxes remaining due on a property prior to being issued the

collector’s deed. Rather than attacking the validity of the collector’s deed, which sets forth only

a rebuttable presumption that all delinquent taxes were paid until title is quieted in an action like

the present case, the District submits that its sewer lien was not an inferior lien that was

foreclosed by the tax sale. See York, 564 S.W.3d at 645 (citing Section 140.330.1); Braun, 129

S.W.3d at 453. Notwithstanding the fact that it did not record its lien prior to the tax sale nor

challenge the validity of the collector’s deed when issued, the District nevertheless maintains its

sewer lien dating back to April 2015 survived the tax sale because Section 249.255 grants the

 16
sewer lien special priority status and exempts the District from any general statutes providing for

the extinguishment of inferior liens. We agree.

 The plain language of Section 249.255 mandates that the District’s sewer lien be

accorded the same treatment as a tax lien for purposes of interpreting and applying Section

249.255 and the tax sale procedures of the Jones-Munger Act. See Sections 140.420, .440,

.460.2, .690 (providing city and other local taxes on real property create a lien subject to the

same enforcement under Chapter 140 as state and county taxes); Section 249.255.1 (providing a

sewer lien “shall have priority as and be enforced in the same manner as taxes levied for state

and county purposes”); see also Branson Hills, 614 S.W.3d at 545, 551 (emphasis omitted)

(treating a Community Improvement District Act (“CID”) assessment as a real estate tax for

purpose of the Jones-Munger Act tax sales procedure given language in the CID Act that the

county collector “shall collect the real property taxes and special assessment made upon all real

property within that county and district, in the same manner as other property taxes are

collected”). While tax sales extinguish junior liens, Section 249.255 expressly gives sewer liens

the same superior priority status as state and county tax liens. See McMullin, 639 S.W.2d at

817 (internal citation omitted). The District’s failure to record the sewer lien until after the tax

sale does not defeat the District’s claim because the sewer lien was not subject to the recording

rules for perfecting a security interest due to the special priority status granted to sewer liens in

Section 249.255. See Golden Delta, 151 S.W.3d at 122–23; see also Land Tax Suit 178, 533

S.W.3d at 822 (noting special priority must be granted by statute to overcome the general first-

in-time rules).

 We acknowledge that Golden Delta is distinguished from this matter because Golden

Delta involved a general foreclosure sale as opposed to a delinquent tax sale, only the latter of

 17
which is governed by the Jones-Munger Act. See Golden Delta, 151 S.W.3d at 122–23. We find

this to be a distinction without a difference and reject the argument that the Jones-Munger Act

dictates a different result in light of the express and specific mandate of the legislature as to

priority accorded to sewer liens in Section 249.255. See St. Louis Inv., 873 S.W.2d at 307

(internal citation omitted) (“The legislature has the power to change the priorities of liens and to

give a statutory lien priority over other liens.”). Accepting the premise that Section 249.255

grants a sewer lien the same priority as a tax lien, we next consider the survivability of a tax lien

following the completion of a tax sale and issuance of a collector’s deed.

 The Supreme Court long has recognized that the Jones-Munger Act contemplates the

possibility that some unpaid tax liens may survive a tax sale. See State ex rel. McGhee v.

Baumann, 160 S.W.2d 697, 700 (Mo. banc 1942). Although Eclipse heavily relies on McGhee

for its preferred interpretation of the superior priority of a collector’s deed over all other liens,

even preexisting tax liens, Eclipse’s reliance on McGhee is misguided because the question

before us is one of statutory interpretation, not stare decisis. We note first that McGhee decided

a different question concerning when a collector’s deed may be issued. See id. But more

particularly, we limit our consideration of McGhee because the Supreme Court has admonished

that we should not rely upon significantly older cases discussing the Jones-Munger Act. See

Branson Hills, 614 S.W.3d at 551, 551 n.28 (citing Sneil, LLC v. Tybe Learning Ctr., Inc., 370

S.W.3d 562, 566 n.3 (Mo. banc 2012); Harpagon, 370 S.W.3d at 582 n.4). The legislature had

recently amended the 1933 Jones-Munger Act at the time McGhee was decided. See McGhee,

160 S.W.2d at 700. McGhee found the revised statutes were not necessarily determinative of the

issues before it because the parties’ claims were filed before their enactment. Id. We limit our

discussion of McGhee accordingly. In McGhee, the collector of revenue for the City of St. Louis

 18
refused to deliver collector’s deeds to purchasers at tax sales where the purchasers only paid the

most recent unpaid tax liens and not the tax liens that had accrued earlier. Id. at 699. McGhee

found it was proper for the collector of revenue to refuse to issue the collector’s deed until the

purchasers paid all the prior unpaid general taxes. Id. at 700.

 Eclipse posits that McGhee stands for the proposition that a special local tax bill is

inferior to a general real estate tax lien, and is thereby extinguished through the general tax

release accompanying a tax sale. See id. at 699 (noting in a tax sale “the liens of all taxes which

are inferior to that of the taxes for which the sale is made are also foreclosed or destroyed by the

sale”). However, “[t]he general rule is that the lien of special tax bills for local improvements is

inferior to that of general taxes where there is no provision to the contrary.” Associated

Holding Co. v. Carrigg, 65 S.W.2d 1059, 1060 (Mo. App. K.C.D. 1933) (emphasis added)

(internal citations omitted). Here, there is a provision to the contrary. Section 249.255.1

specifically elevates sewer liens by obligating their priority and enforcement “in the same

manner as taxes levied for state and county purposes.” When we read together Section 249.255

and the Jones-Munger Act in pari materia, as we must, we hold that unpaid public sewer liens

have the same priority as unpaid state and county taxes, and thus the District’s sewer lien was not

inferior to the general real estate tax lien and was not extinguished by the County tax sale. See

Sections 140.420, .440, .460, 249.255.1; St. Louis Inv., 873 S.W.2d at 306–07; see also Branson

Hills, 614 S.W.3d at 552.

 We lastly address Eclipse’s contention that the District disingenuously argues both that

the sewer lien is not a tax for purposes of the Hancock Amendment and that sewer lien should be

treated like a tax for purposes of priority. We recognize the apparent logic of this argument—

and the argument is appealing at a superficial level. But semantics gives way to legislative intent

 19
and action. The plain language of Section 249.255 does not transform unpaid sewer fees into an

actual tax subject to the Hancock Amendment in light of the Keller criteria. Rather, Section

249.255 mandates that unpaid sewer charges be treated as a lien against properties and that such

liens be enforced the same as and be given the same priority as any tax lien. These two

propositions adequately and meaningfully coexist. See Branson Hills, 614 S.W.3d at 552

(quoting Dickemann, 550 S.W.3d at 68) (“The provisions of a legislative act must be construed

and considered together and, if possible, all provisions must be harmonized[.]”)

 We are cognizant and sympathetic to that fact that Eclipse paid the delinquent taxes on

the Property only to later be confronted with an unpaid sewer lien of which it had no notice from

public recording. We recognize that the District had ample opportunity to record its lien for

unpaid sewer fees before the tax sale and that Eclipse had no reason to know of any unpaid sewer

charges when it purchased the Property at the tax sale. But such sympathy does not permit us to

disregard and fail to give effect to the applicable statutes. See id. The express language of

Section 249.255 persuades us that the District’s sewer lien did not have to be recorded prior to

the collector’s deed in order to obtain the priority status as any tax lien and to survive the tax

sale. See Golden Delta, 151 S.W.3d at 123. We presume the legislature enacted Section

249.255 fully knowing it was granting sewer liens special priority status and enforcement based

on its plain language, even if the outcome is inauspicious for bona fide purchasers at tax sales.

See Howard v. City of Kansas City, 332 S.W.3d 772, 787 (Mo. banc 2011) (internal quotation

omitted) (“The rules of statutory interpretation are not intended to be applied haphazardly or

indiscriminately to achieve a desired result.”); Branson Hills, 614 S.W.3d at 552 (quoting

Dickemann, 550 S.W.3d at 68) (“The legislature is presumed not to enact meaningless

provisions.”). Because Section 249.255 mandates the sewer lien be enforced like state and

 20
county taxes, we conclude the sewer lien was not extinguished by the tax sale of the Property.

See Golden Delta, 151 S.W.3d at 123. Therefore, the trial court did not err in denying Eclipse’s

motion for partial summary judgment, granting summary judgment to the District, and ordering

Eclipse to satisfy the sewer lien. See Branson Hills, 614 S.W.3d at 550; York, 564 S.W.3d at

644. Point Two is denied.

 Conclusion

 The judgment of the trial court is affirmed.

 _______________________________
 KURT S. ODENWALD, Judge

Sherri B. Sullivan, C.J., concurs.
Kelly C. Broniec, J., concurs.

 21